Dyer, D. J.,
(orally.) This is an indictment under section 3894, Revised Statutes, which provides that “no letter or circular concerning illegal lotteries, so-called gift concerts, or other similar enterprises offering prizes, or concerning schemes devised and intended to deceive and defraud the public, for the purpose of obtaining money under false pretences, shall be carried in the mail. Any person who shall knowingly deposit or send anything to be conveyed by mail, in violation of this section, shall be punishable” as the statute prescribes.
The indictment contains three counts. The first count sets out at length the organization of a lottery scheme, by which the defendants undertook to dispose of a hotel at Pond du Lac, known as the Patty House, and charges that on the first day of November, 1879, and on each and every secular day in said month of November, and on each and every secular day between the thirtieth day of said month of November and the tenth day of February, in the year 1880, the defendants did knowingly, wrongfully and unlawfully deposit in the post-office of the United States, at the city of Pond du Lac, and did send to the said post-office, to he conveyed by mail, *665 ■within the meaning of section 3894 of the Revised Statutes, a large number, to-wit, 500, printed circulars concerning said lottery, on each of said days, duly addressed and postpaid, directed to divers persons within and beyond the limits of this district; which circulars each and all were sent and conveyed by and through the mail.
The second count charges that on the twentieth day of January, 1880, the defendants deposited in the post-office at Pond du Lac 100 printed circulars concerning said lottery, addressed to persons unknown to the grand jurors, and that they were deposited to be sent and were sent by mail. The third count is similar to the second, except that it charges the deposit in the post-office at Pond du Lac, on the first day of December, 1879, for the purpose of conveyance through the mail, of 500 circulars concerning said lottery. A motion is made to quash this indictment for duplicity, it being claimed that the first count charges 45,000 distinct, independent offences; the second count 100; and the third count, 500. Upon the argument stress was laid by counsel for the defendants upon the language of this section, which is that “no letter or circular concerning illegal lotteries * * * shall be carried in the mail. * * * Any person who shall knowingly deposit or send anything to be conveyed by mail in violation of this section shall be punishable,” etc. And it was insisted that the deposit in the post-office of a single circular to be carried in the mail constituted an offence. This position was controverted by the attorney for the United States, who urged that, under a proper construction of this statute, an indictment could hardly be maintained that charged the deposit or sending by mail of a single letter or circular relating-to a lottery, and that in that view it was deemed necessary to set out in the indictment the scheme in which the defendants were engaged, and by means of which they were seeking to dispose of certain property, and that each count of the indictment ought to be regarded as stating a single act, and therefore a single offence.
It is true that the second and third counts do not specifically allege that on the tenth day of January, 1880, 100 of *666 these circulars were, at one time and as one act, deposited in the post-office; nor does the third count in express terms allege the deposit, at one time and as one act, of 500 of these circulars; but I think the allegations of each of these counts may be fairly construed to charge the commission of a single offence. To hold otherwise would involve a construction too restricted and technical; and I think there can be no doubt, although it might be, under this statute, an offence to deposit a single letter or circular concerning a lottery in the post-office to be carried by mail, that if a number of deposits are charged as made at or about the same time, so that they consist of a single act, or of successive stages in a single transaction, then we may properly say that one offence has been committed, and that an indictment so charging is not obnoxious to the objection of duplicity. And as these counts charge that on a certain day the defendants deposited in the post-office a certain number of circulars concerning this lottery, to be sent by mail, we may fairly say that there was intended to be and is charged the commission of but one offence in each count.
An interesting question, as may be readily seen, might arise upon the trial, provided, for example, the proof should show that at different times during the day named these circulars, in different quantities, were deposited in the post-office, and it might be that the prosecutor would be required to elect upon which of the transactions he proposed to ask conviction; but without anticipating any such questions I think these counts ought now to be considered as charging single offences.
As to the view that should be taken of the first count I had little doubt at the argument. It is to be observed of this count that it does not charge that on a certain day, and on divers days between that day and the presentment of the bill, a quantity of letters and circulars concerning a lottery were deposited in the post-office to be conveyed by mail, but it charges that on a certain day specifically named, and on each secular day between that day and another day named, and on each secular day between that time and another sub *667 sequent time mentioned, thus particularizing each of the days on which the deposits were made, 500 circulars concerning this lottery were so deposited; and it seems quite impossible to say that here is an allegation of but one offence, but that this count must ba regarded as charging distinct and independent offences, committed on different and distinct days, for each of which offences the defendants might be prosecuted.
In reply, however, the attorney for the United States has urged that this count does properly charge the commission of at least one offence; that the other allegations may be treated as surplusage; and that if the count be open to the charge of duplicity the objection may be obviated by holding that the count aptly charges one offence, and that the other allegations may be disregarded. The difficulty with the position thus urged is that, if the objection to this count can be thus obviated, I do not see why in every ease where an indictment is bad for duplicity the defect may not be avoided by the selection of one of the offences charged, and then holding the other allegations charging distinct offences to be merely superfluous. I do not think the difficulty can be thus avoided. The true distinction between matter which makes an indictment bad for duplicity, and that which may be treated as mere surplusage, is stated by Mr. Bishop in his first volume on Criminal Procedure, section MO: “If an indictment describes one offence, and then adds such words only as are in part sufficient to describe another, it is not therefore double; to be so, it must set out each of the two offences in adequate terms. The principle is that the allegation which is mere surplusage, and therefore void, does no harm. The like case has already been mentioned where an offence not in its natwre continuing is charged to have been committed on more days than one; if only one of the days is adequately alleged the rest is surplusage and the indictment good.”
Again, at section 388 of same volume, the author says: “It is to be observed that we are not now speaking of continuing offences, properly laid under a continuando. * * * * Though the offence is in its nature committed on a single day, *668 and not continuing, if the indictment charges that the defendant did the criminal act on a day which it mentions, and, in general terms, on divers other days, without specifying the others, the latter clause, being in itself an insufficient allegation of time, may be rejected as surplusage. Thus, where the averment was that the defendants, to use the words of the report, on ‘such a day, et diversis aliis diebus et vicibus tarn antea quam postea, keep a common gaming house, ’ this was held to be a good allegation of keeping the house on the one day mentioned. True, in this particular case, more days might have been laid, but the time is so uncertain as to all but one day that only forty shillings are recoverable. Where an indictment sets out that the defendant sold liquors, without license, on a day which it mentioned, and at diyers times between this day and the finding of the bill, it is sufficient, because the inadequate allegations of other days may be rejected as surplusage. But, where a count in an indictment alleged that the defendant committed the crime on the twentieth day of September, in a year specified, and on divers other days and times between that day and the ninth day of December, in a subsequent year specified, it was held to be insufficient. Here there were at least two distinct days adequately set out, and, whatever might be said of the rest, certainly the allegations of neither of these could be rejected as surplusage.”
Here we have a test upon this question. And, certainly, it cannot be said that the offence which is charged in the indictment under consideration is in its nature continuing. The offence is one which may be committed to-day and as distinctly committed to-morrow, and the act of to-morrow may have no connection with that of to-day; and as this count does not merely describe one offence, and by inadequate allegation state in part another, so that the latter allegation may be treated as surplusage, but does charge in adequate terms distinct offences committed on distinct days, I must, within the principles stated, hold this count bad for duplicity.
The motion to quash as to the second and third counts will be overruled, and as to the first will be sustained.