## CLARK et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 2, 1914.)

No. 4051.

1. COMMERCE (§ 33*)—REGULATION—POWER OF CONGRESS—OBSCENE PRINTED MATERIAL.

Congress had power to enact Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1138 [U. S. Comp. St. Supp. 1911, p. 1664]) § 245, making it an offense for any person to knowingly deposit with any express company or common carrier, for the carriage from one state to another, any obscene, lewd, or lascivious or filthy book, pamphlet, picture, paper, letter, writing, print, or other matter of indecent character.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81; Dec. Dig. § 33.*]

2. CONSTITUTIONAL LAW (§ 90*)—CIVIL RIGHTS—FREEDOM OF PRESS.

Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1138 [U. S. Comp. St. Supp. 1911, p. 1664]) § 245, prohibiting the transportation by express from one state to another of any obscene, lewd, or lascivious book, etc., was not unconstitutional as an improper abridgment of the freedom of the press.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 172; Dec. Dig. § 90.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY.**

Where an indictment charged defendants with violating Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1138 [U. S. Comp. St. Supp. 1911, p. 1664]) § 245, prohibiting the deposit with an express company for transportation in interstate commerce of any obscene, lewd, or lascivious or any filthy book, etc., it was not duplicitous because it charged the deposit of several copies of the alleged obscene, lewd, or lascivious book in an express office to be transported in interstate commerce to different people.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

**4. CRIMINAL LAW (§ 396*)—EVIDENCE—OBSCENE BOOK.**

Where defendants were charged with depositing an obscene and filthy book with an express company for transportation in interstate commerce, in violation of Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1138 [U. S. Comp. St. Supp. 1911, p. 1664]) § 245, the charge not being limited to particular passages or parts of the book, defendants were entitled to have the whole book introduced in evidence and considered by the jury under proper instructions from the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 861, 862; Dec. Dig. § 396.*]

In Error to the District Court of the United States for the District of North Dakota; Charles A. Willard, Judge.

Sam H. Clark and C. H. Crockard were convicted of knowingly depositing with an express company an obscene, lewd, lascivious, or filthy book, and they bring error. Reversed and remanded.

George A. Bangs and Tracy R. Bangs, both of Grand Forks, N. D., (D. L. Nash and George R. Robbins, of Grand Forks, N. D., on the brief), for plaintiffs in error.

Edward Engerud, U. S. Atty., of Fargo, N. D. (M. A. Hildreth, Asst. U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

CARLAND, Circuit Judge. Clark and Crockard were indicted, tried, convicted, and sentenced in the District Court for the District of North Dakota on counts 2 and 25 of an indictment which charged them with violating section 245 of the Penal Code. That section, so far as material, was as follows:

"Whoever shall bring or cause to be brought into the United States or any place subject to the jurisdiction thereof, from any foreign country, or shall therein knowingly deposit or cause to be deposited with any express company or other common carrier, for carriage from one state * * * to any other state, * * * any obscene, lewd, or lascivious, or any filthy, book, pamphlet, picture, paper, letter, writing, print, or other matter of indecent character, * * * shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

Count 2 charged that Clark and Crockard on March 6, 1912, in the county of Burleigh, state and district of North Dakota—

"did willfully and knowingly unlawfully deposit and cause to be deposited with Northern Express Company (said express company being then and there a corporation engaged in the business of a common carrier), for carriage and transportation by said Northern Express Company from the city of Bismarck in the state of North Dakota to and into the several places and states here-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

inafter set forth, numerous copies of a certain. lewd, obscene, lascivious, indecent, and filthy book, being a book or magazine commonly known and described as 'Jim Jam Jems by Jim Jam Junior,' for the month of March, 1912, said books so deposited for transportation being copies of the March, 1912, number, issue, or edition of a periodical, magazine, or publication which was in the year 1912 published by said defendants' in the said city of Bismarck in monthly issues or editions and bearing the title and commonly known as 'Jim Jam Jems by Jim Jam Junior,' and which said books so deposited for transportation contained printed on the pages thereof, as defendants then and there well knew, a certain writing, essay, or article entitled 'Three Weeks in the Magic City,' and certain other articles and writings, all of which articles and writings were and are so obscene, lewd, lascivious, filthy, and indecent that they would be offensive to the court and improper to be here reproduced and spread upon the records of this court; that said books, when so deposited, were packed in several packages, each of which packages contained one or more of said books, and each of said several packages, respectively, were by said defendants then and there directed, consigned, and intended for transportation by said express company by and in interstate commerce to the respective places outside the state of North Dakota for delivery to the respective consignees, as follows, namely: To J. J. Casey, at Billings, in the state of Montana; to Monogram Cigar Company, at Aberdeen, in the state of South Dakota; to H. C. Compton, at Minneapolis, in the state of Minnesota; to Miss Loftus, at St. Paul, in the state of Minnesota; to Helen Faust, at Denver, in the state of Colorado; to L. Newman, at Great Falls, in the state of Montana."

Count 25, in language similar to that in count 2, charged that the same defendants on September 9, 1912, at the same place, deposited for transportation in interstate commerce a book called the "Semi-Annual Number of the Jim Jam Jems," addressed to one M. E. Krelle, Chicago, Ill.

[1] By demurrer and otherwise counsel for defendants challenged the power of Congress to enact the law alleged to have been violated, and an interesting argument has been presented to us in support of this proposition. We do not, however, regard the question as an open one, in view of the decisions of the Supreme Court in Lottery Cases, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492; Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715.

[2] It is also claimed that the law is an abridgment of the freedom of the press. We think that the freedom of the press has enough to answer for without making it a protecting shield for the commission of crime. Davis v. Beason, 133 U. S. 333, 10 Sup. Ct. 299, 33 L. Ed. 637; Knowles v. United States, 170 Fed. 409, 95 C. C. A. 579.

[3] It was objected by demurrer that count 2 was bad for duplicity. This contention is based upon the fact that the alleged obscene matter was addressed to different parties, and that more than one copy of the book was deposited. The offense charged is the depositing of copies of an obscene, lewd, or lascivious book in the express office, to be transported in interstate commerce. The fact that these copies were addressed to different persons or that more than one copy was deposited would not render the count bad for duplicity. In Dunlop v. United States, 165 U. S. 486, 17 Sup. Ct. 375, 41 L. Ed. 799, it was alleged that the defendant at a certain time and place deposited and

caused to be deposited "a large number of copies, to wit, 100 copies, of a certain paper, print, and publication entitled 'The Chicago Dispatch,' one of which said copies was then and there directed to 'Mr. Montgomery,' at Chicago aforesaid; another to 'R. M. Williams, Box 801,' at St. Louis, Mo., and the rest to divers persons, respectively, to the said grand jurors unknown." Although this case was contested vigorously, no point seems to have been made that the counts upon which Dunlop was tried and convicted charged more than one offense. It is undoubtedly true that in the Dunlop Case the deposit of a single copy of the paper and in this case a single copy of the book could have been charged as an offense, but, where the copies are all deposited at the same time and place, the pleader may properly charge the depositing as a single offense. 1 Bishop, Cr. Proc. § 436 et seq.; U. S. v. Nunnemacher, Fed. Cas. No. 15,903; U. S. v. Patty (D. C.) 2 Fed. 664; U. S. v. Ferro (D. C.) 18 Fed. 901; U. S. v. Scott (C. C.) 74 Fed. 213.

[4] At the trial, in order to support the charge in count 2, counsel for the prosecution offered in evidence the title page or front cover of the book or magazine referred to therein. Counsel for defendants objected to the offer for the reason that the whole book or magazine was not offered; the objection was overruled and exception allowed. Counsel for the prosecution then offered the fly leaf of the same book or magazine. This fly leaf contained the following: "Jim Jam Jems by Jim Jam Junior," and "Jim Jam Jems, will not be sent by mail. When ordering single copies include express charges in remittance, address Jim Jam Jems, Bismarck, N. D." To this offer there was the same objection, ruling, and exception. Counsel for the prosecution then offered from page 31 of the same book or magazine the following language:

"Henry George once said, 'I am for men.' So is Jim Jam Jems, but we understand that women and preachers sometimes read it."

To this offer there was the same objection, ruling, and exception. Counsel for the prosecution then offered a part of the article entitled "Three Weeks in the Magic City," and referred to in count 2 as being so obscene, lewd, lascivious, filthy, and indecent as to be offensive to the court and improper to be spread upon its records. To this offer there was the same objection, with the addition that the whole of the article, which count 2 alleged made the book or magazine obscene, was not offered. The objection was overruled and exception taken. When the case was with the defendants, their counsel offered in evidence the whole book or magazine referred to in count 2. The offer was denied, and exception allowed. Counsel for defendants then offered all of the article entitled "Three Weeks in the Magic City," which offer was denied, and exception taken.

To support the charge in count 25, counsel for the prosecution offered in evidence the front cover of the book referred to therein. The cover contained this language:

"Jim Jam Jems by Jim Jam Junior, Semi-Annual Number, Six Months Old and such a Healthy Chap; A Volley of Truth."

Counsel for defendants objected to the offer for the reason that the whole book was not offered, objection overruled, and exception allowed. Counsel for prosecution then offered articles from the book, described in count 25, entitled "The Common Law," "Evelyn and the Serpent," "The Blond Hair," and "June Brides." There was the same objection, ruling, and exception. Counsel for the prosecution then offered a part of the article entitled "Affinities and Platonics," and a part of an article entitled "Three Weeks in the Magic City." There was the same objection, ruling, and exception. When the case was with the defendants, their counsel offered in evidence the whole book and all of the articles, a portion of which had been offered in support of count 25. The offer was denied, and exception allowed. At the close of all the evidence, counsel for the defense moved the court to direct a verdict of acquittal for the reason, among others, that the book, which the defendants were charged with depositing for transportation in interstate commerce, had not been introduced in evidence. The motion was denied and exception allowed. We have recited all the evidence which was introduced at the trial under counts 2 and 25, with reference to the character of the book or magazine referred to in said counts. The only evidence the jury considered or were allowed to consider, with reference to the character of the book, were certified copies of the portions thereof, which counsel for the prosecution had introduced in evidence as being obscene, lewd, lascivious, or filthy. The book itself was not introduced in evidence for the consideration of either court or jury. Did the court err in excluding the book and the articles, a portion only of which were offered in evidence by the prosecution? We suppose that the book and the articles, before mentioned, were excluded on the theory that the portions of the book or article excluded had no relevancy whatever in the mind of the court to the question as to whether those portions introduced in evidence were obscene or not. The question then presents itself as to whether, when an indictment charges that a certain book is obscene, the passages, which the prosecutor claims to be obscene, may be introduced in evidence and submitted to the jury, and the remaining portion of the book excluded. Does not the charge in the indictment that the book is obscene necessarily make the book material and relevant evidence upon the question as to whether it is obscene or not? When a prosecutor charges in an indictment that a certain book is obscene, is he not estopped from claiming that the book itself may not be introduced in evidence? No case has been cited, nor have we been able to find one, where the book alleged to be obscene was not admitted.

The case of United States v. Bennett, Fed. Cas. No. 14,571, 16 Blatchf. 338, is cited in support of the ruling of the trial court in excluding the alleged obscene book. We do not think the case cited supports the contention of counsel for the government. In the Bennett Case the book that was offered and received in evidence consisted of 24 printed pages of white paper and four pages of colored paper. The whole book was in evidence. When counsel for Bennett was summing up his client's case to the jury in the trial court, he proposed to

read the whole book. The trial judge said that he would not permit the whole book to be read, but in so ruling also said to counsel:

"If there is any particular sentence necessary to make the sense and meaning of a passage clear, I intend to allow you to read that."

When the case came before the Circuit Court, held by Blatchford, Circuit Judge, and Bennedict and Choate, District Judges, the record showed that each one of the jurymen who tried Bennett had a copy of the book in his hand and took the same with him. The Circuit Court, in deciding that no error was committed by the trial court in preventing counsel from reading all of the book introduced in evidence, said:

"The case elsewhere states that the court allowed the counsel for the defendant to read and comment on the contexts of the passages marked by the prosecution, so far as to show the meaning of the language of the marked passages."

The only inference that can be gathered from the record as brought to the Circuit Court was that to permit counsel to read the whole book was an unnecessary consumption of time, as each juror had the book in his hand.

The next case cited in support of the ruling of the court below is Burton v. United States, 142 Fed. 57, 73 C. C. A. 243, a case decided by this court. The following is quoted from the opinion in that case:

"Of course the character of the book was not to be judged by any brief extracts therefrom, the proper understanding of which depended upon their being taken in connection with the context; nor was it necessary to consider more of the context than was essential to a proper understanding of what was claimed to be obscene."

But this court also said immediately following the above language:

"The portions deemed to be of that character (obscene) were read to the jury by the prosecution, and other portions deemed essential to a proper understanding of what was read by the prosecution were read to the jury by the defendants; thus much of the book was practically and properly eliminated from consideration."

It was ruled in this case that it was not error for the trial court to refuse to charge the jury that the character of the book should not be judged by any extract or extracts therefrom, but upon an inspection of the whole book and with reference to all its contents, for the reason that as counsel for both sides by their mode of conducting the case had eliminated a large part of a book consisting of 300 pages from consideration, it would be confusing to the jury to tell them that they must consider the whole book. Of course the whole book was in evidence. We see nothing in Burton v. United States that conflicts with the language of Judge Thayer in charging the jury in United States v. Clark (D. C.) 38 Fed. 736. In the Clark Case the jury returned into court and asked the following question:

"If the jury find any portion of the book, pamphlet, or circular obscene, lewd, etc., would such finding be sufficient grounds for them to condemn the whole book, pamphlet, or circular?"

Judge Thayer answered this question as follows:

"If the effect of the pamphlet and papers as a whole would be to deprave and corrupt the minds of those into whose hands they might come, whose minds are open to such influences, or to excite lustful or sensual desires, then the pamphlets and circulars should be found to be obscene and lewd, whether such effect on the minds of the readers is produced by single passages or portions of the pamphlet or circulars or by many passages or portions."

In our opinion the above language states the true rule of law. After the defendants had been placed in jeopardy, the power to convict them of the crime charged in the indictment existed nowhere except in the jury. This power was not merely advisory but was absolute and undivided. So far as the record shows, the jury never saw the book that was alleged to be obscene. Certain passages therefrom were submitted to the jury, and, finding these passages obscene, they returned a verdict finding the defendants guilty of depositing an obscene book. It is true that the jury may in a particular case find a book obscene from the consideration of certain passages, but it is placing a defendant at a great disadvantage to have the jury compelled to consider only such passages as the prosecutor deems obscene. It bars counsel from any argument or legitimate comment of whether the book is obscene or not. We think that the conclusion is irresistible that a defendant charged with depositing an obscene book, as in the case at bar, is entitled to have the book, which it is claimed by the prosecutor to be obscene, introduced in evidence to be considered by the jury under proper instructions from the court. It is claimed, however, that the court has the power to say what portions of the book may be excluded, as not having any relevancy or materiality upon the question as to whether the book is obscene or not. Conceding this power, we decide that whatever is charged to be obscene in the indictment of necessity and by virtue of the charge becomes material and relevant evidence to be admitted for the consideration of court and jury, and that, in the exercise of the power to rule upon the admissibility of evidence, the court erred in excluding the book alleged to be obscene in the case at bar. Numerous other errors are assigned, but, as a new trial must be granted, some of them cannot and others may not occur again.

Judgment reversed, and case remanded, with instructions to grant a new trial.