BOONE v. UNITED STATES. *

(Circuit Court of Appeals, Eighth Circuit. March 8, 1919. Rehearing Denied
April 28, 1919.)

No. 4912.

1. INDICTMENT AND INFORMATION ⬳125(19)—OFFENSES BY OFFICERS OF NA-
TIONAL BANK—MAKING FALSE REPORT.
An indictment against an officer of a national bank, under Rev. St. §
5209 (Comp. St. § 9772), for making a false entry in a report, is not du-
plicitous because it charges that the entry was made with intent to injure
and defraud the bank and to deceive the Comptroller of the Currency and
any agent appointed to examine the affairs of the bank.

2. BANKS AND BANKING ⬳257(1)—OFFENSES BY OFFICERS OF NATIONAL BANKS
—INDICTMENT.
An indictment against the president of a national bank held to properly
charge him, not as principal, but as accessory to the making of a false
entry in a report to the Comptroller, in that he abetted, aided, counseled,
and procured such entry to be made by the cashier.

3. BANKS AND BANKING ⬳257(3)—OFFENSES BY OFFICERS OF NATIONAL BANK
—TRIAL—EVIDENCE.
On trial of the president of a national bank, charged with aiding and
abetting the making of false reports to the Comptroller, evidence of the
condition of his account and his indebtedness to the bank, although as it
stood at a later date than the reports, held admissible.

4. BANKS AND BANKING ⬳257(4)—OFFENSES BY OFFICERS OF NATIONAL BANK
—TRIAL—SUFFICIENCY OF EVIDENCE.
Evidence on trial of the president of a national bank for violation of the
statute held sufficient to require submission of the case to the jury.

5. CRIMINAL LAW ⬳1186(1)—REVERSAL—SUFFICIENCY OF EVIDENCE.
That the evidence in support of the charges in certain counts of an in-
dictment, on which defendant was acquitted, was stronger than that under
the single count, on which he was convicted, is not ground for reversal.
Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western
District of Arkansas; Frank A. Youmans, Judge.

Criminal prosecution by the United States against T. W. M. Boone.
Judgment of conviction, and defendant brings error. Affirmed.

Joseph M. Hill, of Ft. Smith, Ark. (Henry L. Fitzhugh and John
Brizzolara, both of Ft. Smith, Ark., and Jeptha H. Evans, of Boon-
ville, Ark., on the brief), for plaintiff in error.

J. V. Bourland, of Ft. Smith, Ark. (Emon O. Mahony, U. S. Atty.,
of El Dorado, Ark., on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges, and TRIEBER.
District Judge.

TRIEBER, District Judge. The plaintiff in error, hereinafter re-
ferred to as the defendant, was indicted with three other officers of
the American National Bank, of which he had been president, for vio-
lations of section 5209, Rev. St. (Comp. St. § 9772). There were nine
counts in the indictment. On the first eight the jury returned a verdict

of not guilty, and a verdict of guilty on the ninth count. It is therefore only necessary to pass on this one count. That count charges:

"And the grand jurors aforesaid, inquiring as aforesaid, upon their said oaths, do further present that the said P. A. Ball, heretofore, to wit, on the 29th day of June, 1915, in the division and district aforesaid, the said P. A. Ball being then and there the said cashier of the American National Bank of Ft. Smith. Ark., and which said bank was established and then existing and doing business as a bank, under and by virtue of the national banking laws of the United States, unlawfully, willfully, and feloniously did make, in a certain report of the condition of the affairs of the said bank at the close of business on, to wit, the 23d day of June, 1915 (which said report then and there purported to be made to the Comptroller of the Currency of the United States, in accordance with section 5211 of the Revised Statutes of the United States[1]), a certain other false entry under a certain head designated in said report as 'Resources' and opposite items '16' and '17' therein, to wit, 'Lawful Money Reserve in Bank,' and in column therein headed 'Dollars Cts.,' which said false entry was and is in figures following, to-wit:

"'34 179 35
15 000 00'

—and which said entry so made then and there purported to show, and did in substance, intent, and effect state and declare, that the lawful money reserve in said bank was in the sum of $49,179.35; and the grand jurors aforesaid further say that the entry was and is false in this, to wit, that the lawful money reserve in said bank was not $49,179.35, but was a much less sum, to wit, the sum of $29,179.35; and the grand jurors aforesaid do further say that the said P. A. Ball, cashier as aforesaid, then and there, at the time and place of making said false entry in said report as aforesaid, well knowing the said entry to be then and there false as aforesaid, thereby intended to injure and defraud the said bank, and to deceive the said Comptroller of the Currency and any agent appointed by said Comptroller to examine, and in any examination by said Comptroller, and agent so appointed, of the affairs of said bank—contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States.

"And the grand jurors, upon their oaths, do further present that the said T. W. M. Boone, being then and there president, and the said A. S. Dowd and the said F. M. Dickenson, being assistant cashiers of said bank, heretofore, to wit, at divers and sundry times before and on the said 29th day of June, 1915, in the said city of Ft. Smith, Ark., within the jurisdiction of said court, unlawfully, willfully, and feloniously, and with intent to injure and defraud said bank, and to deceive the said Comptroller, and any agent by him thereunto appointed, in examining the affairs of said bank, did aid, abet, incite, counsel, and procure the said P. A. Ball, cashier as aforesaid, to make said false entry in manner and form as aforesaid, to do and commit—contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States."

There was a demurrer to each count of the indictment. That relating to the ninth count assigns two grounds—the first, that it is duplicitous, in charging two separate and distinct offenses, to wit, the offense of making a false entry in a report with the intent to injure and defraud the bank and of making the false entry in the report with the intent to deceive the Comptroller of the Currency and any agent appointed by him to examine the affairs of the bank; second, that the allegations in the indictment charged the defendant with being an accessory, and the allegations show that, if he were guilty of any offense, it would be that of principal and not that of an accessory. The demurrer having been overruled, the defendant at the beginning of the trial

[1] U. S. Comp. St. 9774.

objected to the introduction of any evidence upon the ground that the indictment did not charge a public offense, which objection was by the court overruled. After rendition of the verdict, motions in arrest of judgment and for a new trial were filed and overruled. Proper exceptions to these rulings of the court were saved and are assigned as errors in the assignment of errors.

It has been repeatedly held by this court that the practice of objecting to the introduction of evidence upon the ground that the indictment or complaint fails to state a cause of action does not prevail in the courts of the United States, either in civil or criminal causes, except under circumstances of an extraordinary nature. Morris v. United States, 161 Fed. 672, 678, 88 C. C. A. 532, 538; United Kansas Portland Cement Co. v. Harvey, 216 Fed. 316, 132 C. C. A. 460; McSpadden v. United States, 224 Fed. 935, 140 C. C. A. 413; Estes v. United States, 227 Fed. 818, 142 C. C. A. 342; McKnight v. United States, 252 Fed. 687, —— C. C. A. ——.

[1] Is this count of the indictment duplicitous by reason of the allegations that the false entry in the report was made with the intent to injure and defraud the bank and to deceive the Comptroller of the Currency, or any agent appointed to examine the affairs of the bank?

Counsel rely on what they presume was decided by Judge Adams, speaking for this court, in Billingsley v. United States, 178 Fed. 653, 101 C. C. A. 465, and United States v. Norton (D. C.) 188 Fed. 256, decided by Judge Campbell, who was of the opinion that the Billingsley Case sustained the contention now made.

A careful reading of Judge Adams' opinion does not warrant this construction. The issue in that case was whether the indictment charging a false entry in the books of the bank, with the intent to deceive any agent appointed to examine the affairs of the bank, without charging that the false entry was made with the intent to defraud the association, or any other bank or person, was sufficient to charge an offense. The court held the indictment sufficient, saying:

"There are apparently two separate intents contemplated by this section, either of which, when accompanying a forbidden act, constitutes an offense."

It was not held that the making of a false entry to defraud and to deceive constituted separate offenses. The intents were separate, but they might both concur in the making of a single false entry and thereby constitute a single crime. That allegations in an indictment charging both intents in one count are not duplicitous has been decided in McKnight v. United States, 97 Fed. 208, 215, 38 C. C. A. 115, 123, in which the opinion was delivered by Judge (now Mr. Justice) Day, and was concurred in by Judge (later Mr. Justice) Lurton and Circuit Judge Taft. In United States v. Britton, 107 U. S. 655, 665, 2 Sup. Ct. 512, 27 L. Ed. 520, a count charging the acts of the defendant to have been with the intent to injure and defraud the said association and certain persons to the grand jurors unknown was held good and not duplicitous. The same conclusion was reached in Morse v. United States, 174 Fed. 539, 548, 98 C. C. A. 321, in Richardson v. United States, 181 Fed. 1, 8, 104 C. C. A. 69, and in effect in United States v. Corbett, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. Ed. 173.

In Crain v. United States, 162 U. S. 625, 636, 16 Sup. Ct. 952, 40 L. Ed. 1097, a similar question was before the court. A count in the indictment charged three acts, made separate offenses by section 5421, Rev. St. (Comp. St. § 10193), and it was held that a motion in arrest of judgment on that count, on the ground of duplicity, was properly denied. The court said:

"We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute."

The general rule is that in a criminal pleading, when the statute makes either of two or more distinct acts connected with a more general offense, and subject to the same measure and kind of punishment, indictable separately and as distinct crimes when committed by different persons or at different times, they may, when committed by the same person at the same time be coupled in one count as constituting one offense. Lehman v. United States, 127 Fed. 41, 45, 61 C. C. A. 577; May v. United States, 199 Fed. 53, 117 C. C. A. 431; Clark v. United States, 211 Fed. 916, 918, 128 C. C. A. 294, 296; Glass v. United States, 222 Fed. 773, 138 C. C. A. 321.

Another ground urged is that the indictment, after charging the making of the report of the condition of the bank, inserted in parenthesis these words:

"(Which said report then and there purported to be made to the Comptroller of the Currency of the United States, etc.)."

It is claimed that this count fails to charge that the report was made to the Comptroller of the Currency, but only that it purported to be made. What the pleader of the count meant was that the report, being false, only purported to be a report. In what manner this tended to the prejudice of the defendant we cannot conceive. It is therefore clearly within the provisions of section 1025 Rev. St. (Comp. St. § 1691). The court committed no error in overruling the demurrer or the motion in arrest of judgment.

[2] Nor is this count defective for charging the defendant as an accessory, instead of a principal. The report was made by the cashier of the bank, and the indictment charges the defendant to have abetted, aided, counseled, and procured the said P. A. Ball, cashier as aforesaid, to make said false entry, etc. As the defendant did not make the report, he could only be held responsible if he aided and abetted the person who made it.

[3] It is next claimed that the court erred in the admission as evidence statements made by the defendant to Mr. Machen in relation to matters existing at a later date than any of the reports charged to have been false. These statements relate to large loans to and overdrafts by the defendant, and corporations and firms in which the defendant was interested, which existed at a later date than any of the alleged false reports set out in the indictment. The court in overruling the objections to this testimony, said:

"I think this particular testimony is within the boundaries of that rule. It tends to show the knowledge which Mr. Boone had at that time; the knowledge that he had, and at least forms a starting point to go backwards over the period covered by this indictment. I believe it is within the field of collateral facts that may be properly introduced."

It must not be overlooked that the defendant is not charged with having made these reports, but to have aided, abetted, incited, and counseled P. A. Ball, the cashier of the bank, of which the defendant was president, to make these false reports. It was therefore essential to prove his knowledge of the falsity of the reports, and his intent to deceive the Comptroller. Besides, the defendant was tried on all nine counts of the indictment, some of which charged the falsity of the reports to consist in the failure to report defendant's overdrafts. There was no error in admitting this testimony. In Allis v. United States, 155 U. S. 117, 119, 15 Sup. Ct. 36, 37 (39 L. Ed. 91), a similar question was before the court, and it was held:

"There are two sufficient answers to these objections: (1) While the defendant was found guilty only on one, he was being tried on 25 counts, which counts charged false entries at different times running from February to December, and therefore testimony was competent as to the condition of his account stretching through the entire time. (2) The gravamen of this offense is the false entry with intent to injure, defraud, or deceive, and it was competent to show the state of the defendant's account, not merely at the very day the false entry was made, but also before and after that date, for the purpose of throwing light on the intent with which it was made."

The authorities that such evidence is admissible for the purpose of proving the intent of the defendant, where intent is an essential ingredient of the charge are practically uniform. Alexander v. United States, 138 U. S. 353, 11 Sup. Ct. 350, 34 L. Ed. 954; Clune v. United States, 159 U. S. 593, 16 Sup. Ct. 125, 40 L. Ed. 269; Spurr v. United States, 87 Fed. 701, 710, 31 C. C. A. 202. In Moffatt v. United States, 232 Fed. 522, 533, 146 C. C. A. 480, 491, this court, after saying that "the intent with which an accused does a subsequent act cannot be imputed to him as of the prior date of the crime charged," proceeds by holding:

"These rules, however, do not conflict with or impair the long-established doctrine that in cases involving fraud, or the intent with which an accused does an act, collateral facts and circumstances, and his other acts of a kindred character, both prior and subsequent, not too remote in time, are admissible in evidence."

A large number of special instructions were asked in behalf of the defendant and by the court refused. Some of them referred to the counts on which the defendant was acquitted, and therefore are not involved on this writ of error. Those relating to the ninth count were all included in the charge of the court, although not in the language of the requested instructions. This is not necessary. One of the requests was for a directed verdict of not guilty, on this as well as the other eight counts. This makes it necessary to determine whether there was substantial evidence to warrant the submission of the case to the jury on this count.

[4, 5] In view of the fact that the defendant's liberty is involved, we have read and reread the testimony, and without prolonging this opinion by setting it out herein, which can serve no useful purpose in determining any question of law, we are of the opinion that there was ample and substantial evidence to make it the duty of the court to submit it to the jury. It is true, as claimed by counsel, that the evidence as to some of the other counts, especially the sixth and eighth, on which the defendant was acquitted, is stronger against the defendant than that on this count; but it was for the jury to determine on what counts, if any, the defendant should be found guilty, and he certainly cannot complain of not having been found guilty on these counts. It is a well-known fact that juries frequently hesitate to return verdicts of guilty on a large number of counts, when the punishment which may be imposed on each count is as severe as that provided for violations of this statute (the minimum punishment on each count is five years). They therefore satisfy their consciences by a verdict of guilty on one or two counts, and not always on the counts supported by the strongest evidence.

There was a motion for a new trial on the usual grounds, and also upon the ground that the jurors were improperly influenced by newspaper articles, highly prejudicial to the defendants. Motions for a new trial are addressed to the sound discretion of the trial court, and are not the subject of an assignment of error. The newspaper articles complained of were no doubt of an inflammatory nature, and if the evidence had shown that they were read by the jurors, or any of them, the trial court would have been justified to have set the verdict aside. But a careful reading of the evidence, some of which was by ex parte affidavits, and a great deal of it by witnesses appearing in court and testifying orally, satisfies us that the finding of the court that none of the jurors had read the articles is fully sustained. Counsel in their brief say:

"The jurors were kept together and quarters for them provided at the Hotel Goldman in the city of Ft. Smith. They were placed in rooms connecting with each other, and the marshal's room in an entry that had no other rooms than those occupied by the jurors and the marshal. The telephones of all the rooms were disconnected, except the one in the marshal's room. These most excellent precautions were taken to prevent improper influences reaching the jury, and the trial judge carefully guarded the rights of the defendant in this particular, and we believe that the marshal in his instructions to his deputies carefully did likewise."

We find there was no prejudicial error in the trial of this case, and the judgment is therefore affirmed.

SANBORN, Circuit Judge (dissenting). A careful examination of the record in this case has forced my mind to the conclusion that there is no substantial evidence in it that Boone was guilty of the offense of which he was convicted, so that I am unable to consent to an affirmance of the judgment against him which sentenced him to the penitentiary for seven years. Reduced to its lowest terms, this is the case the record presents, as I understand it: Boone was the president and Ball the cashier of the bank. Ball was indicted for making the false

entries charged in the indictment, and Boone for aiding and abetting him; but Ball was not prosecuted, but was called by the United States and testified on its behalf that he had frequently embezzled funds of the bank and had made false entries in the books and reports to the Comptroller without Boone's knowledge. Ball testified that he had an understanding or agreement with Boone that, when the cash was low in the bank, it should be boosted by false entries in the books of the bank, and that in two instances, relating respectively to Byllesby & Co.'s and Bontty's notes specified in two specific counts in the indictment, Boone conferred and agreed with him that entries of payments of them in cash should be made in the bank books when the notes had not been paid, and that Ball made the entries. Ball then testified that he could not remember of any other instances in which he and Boone conferred about any false entries. Boone testified that he never had had any understanding with Ball that when the cash was low it should be boosted by false entries in the books of the bank, that he never conferred or agreed with Ball that the false entries which Ball made regarding payment in the cases of the Byllesby & Co.'s and Bontty's notes should be made, and that he never aided or abetted Ball in making the false entries in the books or reports concerning which he was indicted, nor did he ever have any notice or knowledge before the bank failed, of any of the false entries in the books of the bank or in the Comptroller's reports which were charged in any of the nine counts of the indictment against Ball and him. This was all the evidence there was upon the question whether or not Boone had aided or abetted Ball in making the false entries in the Comptroller's report charged in the ninth count of the indictment. There was other evidence from various witnesses regarding the other eight counts. The evidence upon the nine counts was submitted to the jury, which returned a verdict in Boone's favor on all the counts, except the ninth, thereby finding as to each of the eight counts that Ball's testimony was false and Boone's was true, and necessarily finding that Ball's testimony was false and Boone's was true regarding the entries concerning the Byllesby & Co.'s and Bontty's notes, which were the only entries that Ball testified that Boone conferred with him about.

The result is, as I read the record, that on the question of substantial evidence to sustain the verdict upon the specific charge in the ninth count, which is that Boone aided and abetted Ball in making a false entry of $49,179.35, when he should have made a true entry of $29,179.35, in the report to the Comptroller of the 29th day of June, 1915, this is the case: Boone testified that he had no knowledge of this entry or its falsity, and that he never aided or abetted Ball in making it. Ball testified that he made it, that he had an understanding or agreement with Boone that when the cash was low in the bank it should be boosted by entries in the books of the bank, but that he could not remember that he ever had any conference, understanding, or agreement with Ball about this entry in the report to the Comptroller, which, of course, is not an entry in any of the books of the bank. Boone testified that he never had any understanding or agreement with Ball about making any false entries in books, or reports, or elsewhere. Upon that issue, wheth-

er or not there was such an agreement or understanding, the jury has found upon the other eight counts, and has necessarily specifically found upon the two counts regarding the Byllesby & Co.'s and Bontty's notes, that Ball was mistaken and Boone was right.

Because in my opinion this record presents a case in which there was no substantial evidence that Boone was guilty of the offense charged in the ninth count of the indictment, of which he was convicted, and because the conclusion that he was so guilty is utterly inconsistent with the findings of the jury on the other eight counts, I cannot resist the conclusion that the judgment below should be reversed.