## FRISINA v. UNITED STATES.

### No. 9029.

Circuit Court of Appeals, Eighth Circuit.
April 21, 1931.

P. H. Cullen, of St. Louis, Mo. (Anthony Canzoneri and Abbott, Fauntleroy, Cullen & Edwards, all of St. Louis, Mo., on the brief), for appellant.

Howard Williams, Asst. U. S. Atty., of St. Louis, Mo. (Louis H. Breuer, U. S. Atty.,

of Rolla, Mo., on the brief), for the United States.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge. .

VAN VALKENBURGH, Circuit Judge.

Appellant was indicted under the following provisions of section 65 of the Criminal Code (section 121, title 18, USCA, p. 304), which for convenience we have numbered 1 and 2.

(1) "Whoever shall forcibly assault, resist, oppose, prevent, impede, or interfere with any officer of the customs or of the internal revenue, or his deputy, or any person assisting him in the execution of his duties, or any person authorized to make searches and seizures, in the execution of his duty. * * *"

(2) "And whoever shall use any deadly or dangerous weapon in resisting any person authorized to make searches or seizures, in the execution of his duty, with intent to commit a bodily injury upon him or to deter or prevent him from discharging his duty, shall be imprisoned not more than ten years. (R. S. § 5447; Mar. 4, 1909, c. 321, § 65, 35 Stat. 1100.)"

The indictment was in four counts. A sufficient understanding of the points raised on this appeal requires quotation of the charging part of these several counts:

"Count 1. That on or about the said 3d day of August, 1929, in the City of St. Louis, in the State of Missouri, within the Division and District aforesaid, and within the jurisdiction of this court, Carmelo Frisina, alias Charles Freese, Knowingly, Wilfully, Unlawfully and Feloniously did forcibly resist, impede, oppose and interfere with the aforesaid mentioned federal prohibition agents, namely Agents Harris, Byrd, Waters, Stanley and Mulderig, in the execution of the said warrant by entering the premises then and there being searched, armed with a loaded automatic shotgun and threatening the aforesaid agents with their lives unless they immediately discontinued the search, with the intent then and there on the part of him, the said Carmelo Frisina, alias Charles Freese, to deter and prevent the said prohibition agents from discharging their official duties aforesaid; he, the said Carmelo, alias Charles Freese, then and there well knowing the said agents to be officers authorized to make searches and seizures, and to be engaged in the execution of their duties as

such; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Count 2. That on or about the 3d day of August, 1929, in the City of St. Louis, in the State of Missouri, within the Division and District aforesaid, and within the jurisdiction of this court, Carmelo Frisina, alias Charles Freese, Knowingly, Wilfully, Unlawfully and Feloniously did use a deadly and dangerous weapon, to-wit, an automatic shotgun loaded with gunpowder and shot in resisting two of the aforesaid prohibition agents, namely, Thomas L. Harris and Carol T. Byrd in the execution of their duty aforesaid, he, the said Carmelo Frisina, alias Charles Freese, then and there well knowing the said Thomas L. Harris and Carol T. Byrd to be prohibition agents engaged in the discharge of their official duties, with the intent then and there on the part of the said Carmelo Frisina, alias Charles Freese, to deter and prevent them from discharging their duties aforesaid, by pointing and aiming the said shotgun at the agents aforesaid, and commanding that they desist and discontinue the said search on pain of immediate death; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Count 3. That on or about the 3d day of August, 1929, in the City of St. Louis, in the State of Missouri, within the Division and District aforesaid, and within the jurisdiction of this court, Carmelo Frisina, alias Charles Freese, Knowingly, Wilfully, Unlawfully and Feloniously did, with a deadly and dangerous weapon, to-wit, an automatic shotgun loaded with gunpowder and shot, forcibly assault Carol T. Byrd, a federal prohibition agent as aforesaid, in resisting the said Carol T. Byrd in the execution of his official duty as above described, he, the said Carmelo Frisina, alias Charles Freese, then and there well knowing the said Carol T. Byrd to be a prohibition agent engaged in the execution of his official duty, with the intent then and there on the part of him, the said Carmelo Frisina, alias Charles Freese, to commit bodily injury upon the said Carol T. Byrd, by aiming and discharging the said automatic shotgun at the said Carol T. Byrd; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Count 4. That on or about the 3d day of August, 1929, in the City of St. Louis, in the State of Missouri, within the Division and District aforesaid, and within the juris-

diction of this court, Carmelo Frisina, alias Charles Freese, Knowingly, Wilfully, Unlawfully and Feloniously did, with a deadly and dangerous weapon, to-wit, an automatic shotgun, loaded with gunpowder and shot, forcibly assault Thomas L. Harris, a federal prohibition agent as aforesaid, in resisting the said Thomas L. Harris in the execution of his official duty as above described, he, the said Carmelo Frisina, alias Charles Freese, then and there well knowing the said Thomas L. Harris to be a prohibition agent engaged in the execution of his official duty, with the intent then and there on the part of him, the said Carmelo Frisina, alias Charles Freese, to commit bodily injury upon the said Thomas L. Harris, by aiming and discharging the said automatic shotgun at the said Thomas L. Harris; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

At the conclusion of the government's case, a motion to elect between the various counts was interposed and sustained. Counsel for appellee elected to stand upon counts 2, 3, and 4, based upon the second subdivision of the statute as hereinabove set out and numbered. The court in its charge instructed the jury to find appellant not guilty upon count 2, and submitted the case upon counts 3 and 4. Verdicts of guilty were returned upon these two counts. The court imposed a penitentiary sentence of six years on each count, the terms to run and terminate concurrently.

To obtain a reversal, counsel for appellant rely upon four specifications of error:

(1) The defendant, after a verdict of not guilty on count No. 2 in this case, cannot be lawfully sentenced pursuant to a repugnant and inconsistent verdict of guilty upon counts 3 and 4.

(2) If counts 3 and 4 do not charge an offense under the second subdivision of the statute, supra, and therefore the judgments thereunder are not repugnant and inconsistent as claimed in the first specification of error, then these counts must be bottomed upon the first subdivision of the statute, and the sentences of six years are excessive.

(3) The charge of the court failed to embody a full or accurate statement as to the appellant's right of self-defense under the proof offered in his behalf.

(4) The court failed to require the jury to find the intent to commit bodily injury as an element of the offense charged, and as requested by appellant.

We take up these specifications in their order.

1. There is no necessary inconsistency and repugnancy between the instructed verdict on count 2 and those returned upon counts 3 and 4. The general rule is that there is no fatal inconsistency in a verdict of guilty on one count and a verdict of not guilty on another count, though testimony warranting conviction on the one count would warrant conviction likewise on the other. Weiderman v. United States (C. C. A. 8) 10 F.(2d) 745; Corbin v. United States (C. C. A. 8) 205 F. 278; Boone v. United States (C. C. A. 8) 257 F. 963; Marshallo v. United States (C. C. A. 2) 298 F. 74; Steckler v. United States (C. C. A. 2) 7 F.(2d) 59; Seiden v. United States (C. C. A. 2) 16 F.(2d) 197; Carroll v. United States (C. C. A. 2) 16 F.(2d) 951; Carrignan v. United States (C. C. A. 7) 290 F. 189; Gozner v. United States (C. C. A. 6) 9 F.(2d) 603.

This rule has been modified in certain cases. It has been held that, where there is a verdict of guilty on one count and of not guilty on another count, the verdict of guilty must be based on evidence other than that pleaded in support of the count on which the verdict of not guilty is returned. Hohenadel Brewing Co., Inc., v. United States (C. C. A. 3) 295 F. 489; Peru v. United States (C. C. A. 8) 4 F.(2d) 881, 884; Murphy v. United States (C. C. A. 8) 18 F.(2d) 509, 512.

The application of these rules must depend upon the facts and circumstances in the individual case.

Comparison of the allegations contained in count 2 with those employed in counts 3 and 4 reveals marked differences. The use of a deadly or dangerous weapon in resisting a person authorized to make searches and seizures denounced by the second subdivision of the statute as numbered above must be "with intent to commit a bodily injury upon him," or "to deter or prevent him from discharging his duty." The offense may be committed with either of two distinct intents and purposes—the one, to "deter or prevent"; the other, "to commit a bodily injury." The element of resistance is common to both. Count 2 discloses the first of these two purposes. The intent to commit a bodily injury is not charged. The use of the gun was rather in the nature of a threat by which it was hoped to deter the officers from proceeding.

The third and fourth counts present an additional element. It is expressly charged

that the intent was to commit bodily injury by both aiming and discharging the shotgun at the officers. The "use" of the deadly and dangerous weapon is described as an "assault"; this term, with the subsequent charge of "aiming and discharging," satisfies the demands of pleading under the second subdivision. The assault here described is not that contemplated by the first subdivision of the statute, to wit, common assault, amounting only to a misdemeanor and punishable as such. The third and fourth counts charge felonious assaults. It will thus be seen that the allegations made and the proofs required by the third and fourth counts differ so materially from those incidental to the second count that the verdict of acquittal on the latter and those of conviction on the former are in no sense inconsistent and repugnant. It should also be noted that the verdict on the second count was directed. The court gave as its reason for this action that that count charged a general assault upon all of the agents engaged in the search; that the proofs failed to sustain this charge. In this respect the court evidently confused the allegations of the second count with those of the first. Its ruling had no reference to the substance of the prosecution, as disclosed by the pleadings and proofs. For this reason, the usual presumptions attending the verdicts of juries and the rulings of courts are not present. It is further to be noted that the gist of these subdivisions of the statute is "resisting" officers authorized to make searches or seizures. The offense, in general, is the same under both subdivisions, which, in the statute, are not separately numbered. The punishment is graduated to meet the degree of turpitude in the resistance offered.

2. Inasmuch as it is obvious that counts 3 and 4 do charge an offense under the second subdivision of section 121, the sentences imposed by the court were well within the statutory provision.

■ 3. That appellant did some shooting with his automatic shotgun is beyond dispute. His claim is that he did so in self-defense and with no purpose to resist or deter the officers in their search. Counsel for appellant made a number of requests for instructions embodying this defense. They were not given, and error is assigned for this reason. The court charged as follows upon this phase of the controversy: "It is, of course, not only common sense but law, that a man has a right to defend himself, if a prohibition agent commences an assault on a citizen, wholly without the fault of a citizen. But as I have said to you, a citizen has no right to commence an assault upon a prohibition agent, knowing him to be such, and knowing that that agent is engaged in performing his duty, whatever the reason for it may be, whether it be dogs or anything else. But if he does not know that the agent is a prohibition agent, and does not know that he is engaged in the performance of his duty, he, of course, has the right of self-defense. I would go so far as to say that the law is, or ought to be—and I say it is—that if he did know they were prohibition agents, and were there engaged in the performance of their duty, that if they wantonly, and without cause, assaulted him so as to render it necessary that he fight back, or shoot back, in order to save his life, or save himself from having inflicted upon him great bodily harm, that he would then have the right of self-defense. But the assault must have been begun by them, without cause or excuse or reason on their part, without his having done anything to cause them to assault him. If they began it, without cause or excuse, then, of course, the defendant had the right of defense. If they did not begin it, but if he began it, with knowledge, then, of course, he had no such right. As a matter of opinion—upon matters which are largely evidentiary—I think that there is where a solution of this case lies, so far as you gentlemen are concerned. Of course, it follows from that, that if defendant did not know until after the assaults complained of here had been fully consummated, that these men were prohibition agents, then, if they began this trouble, he had a right to defend himself."

We think that under the facts and circumstances of this case the foregoing charge sufficiently covered the point under consideration.

■■ 4. The statute requires that, as charged in the third and fourth counts, the resistance with the use of a deadly or dangerous weapon must be made with intent to commit bodily injury. It is complained that the court refused to charge as requested by appellant, and failed to require the jury to find the existence of such intent. Substantially at the outset the court read the pertinent section of the statute which contains the requirement of intent to commit bodily injury. The indictment charges that the "use" of the deadly weapon was made in the form of an "assault." The court discussed

and defined this term as follows: "You will want to know what an assault is, because the word 'assault' connotes a technical thing. It might seem, in fact, to be one thing to you, whereas in law it might seem to be another. But, an assault, in law, and as that word occurs in the section of the statute which I have read to you, is any attempt, with force or violence, to do a bodily hurt to another person, whether such attempt be made from malice or wantonness, and under such circumstances as denote, at the time, an intention to do such bodily hurt, coupled with a present ability to carry such intention into effect."

Later on in its charge the court said: "Of course, you must find that the resistance here was a wilful resistance, that is, that it was intentional and not accidental, and that it implied an evil intent, without justifiable excuse. When an act is wilfully done it means that it is done intentionally and done wrongfully, and done with an evil intent. I have already said to you that you must find here, before you can find defendant guilty, that he knew these men were prohibition officers, and that he knew they were engaged, at the time he is said to have assaulted them, in the prosecution of their duties as such, in making

a search. You can consider the evidence in the case, pro and con, upon that question."

It is unnecessary to cite decisions to the effect that the court's charge need not adopt the language of an instruction requested, nor follow the exact language of the statute in defining and explaining its terms. It is enough if the subject-matter is sufficiently covered, and made clear to the understanding of the jury. The indictment charged, and the proofs tended to show, that appellant in his resistance used an automatic shotgun, loaded with gunpowder and shot; that he aimed and discharged it at the government officers. The court charged that, to support a verdict of guilty, this act of resistance must have been willful, and done with evil intent. When a loaded shotgun is discharged at an officer with evil intent under the circumstances here present, it is scarcely necessary for the court to add in hæc verba that that intent must be to commit bodily injury. We think the jury entered upon its deliberations with no misunderstanding of what must be found by it before it could properly return a verdict of guilty.

No reversible error appearing, the judgment is affirmed.