## MURPHY v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
March 29, 1927.

No. 7614.

**1. Intoxicating liquors ⬅143—Nuisance within Prohibition Act may be proved by number of sales or single sale, or possession under facts showing place maintained to sell liquor (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).**

Existence of a nuisance, within National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), may be proved by a number of sales sufficient to establish a course of business, or by single sale, or by possession, under facts showing place maintained for keeping and selling liquor.

**2. Criminal law ⬅878(3)—Evidence under count charging sale of which defendant is acquitted must be disregarded in considering count of same indictment charging maintenance of nuisance (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).**

One cannot be convicted of maintaining a nuisance, under National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), on evidence of sale of liquor of which sale he is under another count in the same indictment acquitted; the acquittal removing such sale from consideration as an element of the nuisance charged.

**3. Criminal law ⬅1159(1)—Circuit Court of Appeals may not speculate to reasoning that led to jury's verdict.**

The Circuit Court of Appeals may not speculate as to reasoning or considerations that led to a verdict of a jury in a criminal case.

**4. Intoxicating liquors ⬅236(9)—Evidence of possession and maintenance of nuisance held insufficient, without evidence of sale or control of liquor by defendant (National Prohibition Act, tit. 2, § 21 [Comp. St. § 10138½jj]).**

Evidence of possession and of maintaining common nuisance, under National Prohibition Act, tit. 2, § 21 (Comp. St. § 10138½jj), held insufficient, where there was no evidence of sale, and liquor in adjacent part of building was not shown to be under defendant's control, or actually taken therefrom to defendant's saloon.

**5. Intoxicating liquors ⬅139—"Possession," within National Prohibition Act is actual possession by accused of liquor under his control and dominion (National Prohibition Act [Comp. St. § 10138¼ et seq.]).**

"Possession," within National Prohibition Act (Comp. St. § 10138¼ et seq.), means actual possession by person accused of having intoxicating liquor, not necessarily in his hands, but under his control and dominion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Possession.]

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

John Murphy was convicted of possession of whisky and maintenance of a common nuisance, and he brings error. Reversed and remanded.

Frank D. Rader, of Kansas City, Mo. (James M. Rader, of Kansas City, Mo., on the brief), for plaintiff in error.

William L. Vandeventer, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., and Robert R. Brewster, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiff in error was the proprietor of a soft drink "parlor" or saloon located at No. 9 Missouri avenue in Kansas City, Mo. April 14, 1926, the district attorney for the Western district of Missouri filed against Murphy an information containing three counts. The first count charged a sale of one-half pint of whisky on the 2d day of July, 1925; the second count charged possession of 52 pints of whisky on the 9th day of July, 1925; and the third count charged the maintenance of a

common nuisance at the above-named place of business.

The evidence upon which the government relied for conviction was produced by one James Bradford, a prohibition agent, who testified that on the 2d day of July, as charged in the first count, he went to Murphy's place of business, found Murphy behind the bar, and asked to buy a half pint of whisky; thereupon another man standing near the bar, apparently through some communication from Murphy, left the saloon, walking in a westerly direction, and returned within a few minutes with a half pint of whisky, which was handed to Murphy, and by Murphy to the witness, who paid for it and departed. On the 9th of July the witness Bradford took up his position on the side of Missouri avenue opposite Murphy's place; while there he saw men come out of the place, enter a door immediately to the west of the room occupied as a soft drink emporium, and shortly thereafter return and re-enter the Murphy place; this was repeated several times. Upon the faith of this showing Bradford procured a search warrant for the premises described as No. 9 Missouri avenue. On the afternoon of that day he and his associates made a search of this building. No. 9 Missouri avenue apparently consists of one storeroom on the ground floor, occupied by Murphy, as aforesaid, as a place of business. The building consists of three stories, the entrance to the upper part being through a door immediately to the west of Murphy's room; this door leads into a small entry or hallway, from which a stairway leads to the upper floors. There is a door from Murphy's room into this hallway; this door, on the occasion of the raid, was locked and bolted from the side of the hallway. No liquor was found in the room occupied as a soft drink place. Demand was made upon Murphy, who was present, to produce the key leading into the hallway; upon his denial that he had such a key, and his failure to produce it, the door was forced by the raiding officers. Upon the first step of the stairway 2 one-half pint bottles of whisky were found, and beneath this first step were 49 additional half pint bottles. The search was pursued to a room on the second floor, in which were found a gallon of whisky and 12 pints of home brew beer.

At the trial Murphy denied all connection with the hallway and the upper part of the building, and of the liquor there found. The uncontradicted testimony was that Murphy subrented the store room occupied by him from one Jerry Welch, who had control over the balance of the building, including the hall, stairway, and upper stories. Murphy also produced witnesses who corroborated his testimony that on the 2d of July, the date on which Bradford claimed to have purchased from him the half pint of whisky, he was in Monegaw Springs with a party of friends and did not return until July 4th. The government offered no evidence in rebuttal, nor anything in addition to that above recited. The jury returned a verdict of not guilty upon the first or sale count, and of guilty upon the second and third counts, for possession and the maintenance of nuisance respectively. Plaintiff in error seeks to reverse the judgment entered thereon upon the ground that the evidence fails to sustain the verdict of the jury on either count.

Section 21 of title 2 of the National Prohibition Act (Comp. St. § 10138½jj) provides that "any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined," etc.

[1] The existence of a nuisance may be proved by a number of sales sufficient to establish a course of business, or by a single sale when accompanied by facts showing that the place where the sale was made was maintained for keeping and selling intoxicating liquor. It may also be established by possession of liquor when accompanied by facts showing that the place where the possession is had is maintained for a similar purpose. Stoecko v. United States (C. C. A. 3) 1 F. (2d) 612; Singer v. United States (C. C. A. 3) 288 F. 695; Hohenadel Brewing Co. v. United States (C. C. A. 3) 295 F. 489.

[2] In the case at bar a sale was charged in the first count of the information. Upon this count the defendant was acquitted. Plaintiff in error insists that this result of the trial removes that sale from consideration as an element of the nuisance charge in the third count; that unless that count is supported by evidence other than this sale the conviction under it cannot be sustained. This raises a point upon which the Courts of Appeals of several circuits are in disagreement. The matter in some form has arisen many times. For the most part, the ruling has been based upon considerations not necessarily decisive of the point at issue here. The ques-

tion is of such importance, in view of existing differences, that it demands some analysis to insure a fairly safe foundation for the conclusion to be reached.

The Circuit Court of Appeals for the Second Circuit, in a number of decided cases, has adopted the view, to which it consistently adheres, as follows: That when a jury convicts upon one count, and acquits upon another, the conviction will stand, although there is no rational way to reconcile the two conclusions. Marshallo v. United States (C. C. A. 2) 298 F. 74; Steckler v. United States (C. C. A. 2) 7 F.(2d) 59; Seiden v. United States (C. C. A. 2) 16 F.(2d) 197; Carroll v United States (C. C. A. 2) 16 F.(2d) 951.

This conclusion is based upon the view that "it is within the power of the jury, though not within its right, to acquit an accused in defiance of law and reason, and however plain his guilt," and upon the further consideration generally recognized, where justified by the facts and the nature of the offense charged, that "a verdict that is apparently inconsistent affords no basis for a reversal of a judgment 'predicated thereon, when the evidence is sufficient· to support either of two separate offenses." Carrignan v. United States (C. C. A. 7) 290 F. 189.

This doctrine finds support in the majority opinion in Gozner v. United States (C. C. A. 6) 9 F.(2d) 603. The contrary view is forcibly expressed in the dissenting opinion of Circuit Judge Donahue. Some of the cases, at least, upon which Judge Tuttle, for the majority, relies, do not, in our judgment, support his conclusion.

In Corbin v. United States (C. C. A. 8) 205 F. 278, the defendant, a postmaster, was charged in one count with feloniously converting to his own use money of the United States which came into his office, and in a second count with embezzling the same amount of money by failing to remit or deposit it as required by law. A verdict of not guilty was directed on the second count, and a conviction resulted on the first count. It was contended that the verdict of guilty on the first count was inconsistent with the directed verdict of not guilty on the second count, and therefore void. In holding to the contrary, Judge Hook, for this court, said:

"If we could assume that the money described in the two counts was the same, which we cannot do, because the evidence is not before us, a common instance of charging in separate counts different ways of committing the same offense would be presented. Caha v. United States, 152 U. S. 211, 14 S. Ct. 513,

38 L. Ed. 415. In such a case the withdrawal of one count, by directing a verdict at the final submission of the case, does not affect the other." Of course, if the money described in the two counts was not the same, no inconsistency would appear.

In Boone ᵥv. United States, 257 F. 963 (C. C. A. 8), the holding was merely "that the evidence in support of the charges in certain counts of an indictment, on which defendant was acquitted, was stronger than that under the single count, on which he was convicted, is not ground for reversal."

The rule in the Third circuit differs from that announced in the Second and Sixth circuits. It is there held that where there is a verdict of guilty on one count, and of not guilty on other counts, the verdict of guilty must be based on evidence other than that pleaded in support of the other counts. John Hohenadel Brewing Company v. United States (C. C. A. 3) 295 F. 489. This rule has likewise been adopted in this circuit. Peru v. United States (C. C. A.) 4 F.(2d) 881–884.

It is conceded by Judge Tuttle in Gozner v. United States, supra, that decisions are plentiful which appear tacitly to assume a doctrine contrary to that announced by him in the latter case. There is no doubt that the decisions are not in harmony upon this point, and no useful purpose would be subserved by further citation of cases, most of which may be readily distinguished because of the differing nature of the offenses charged, their essential elements, and the facts, upon which the divergent conclusions were based. In his dissenting opinion in Gozner v. United States, supra, Judge Donahue makes a distinction which, in our judgment, discloses a correct rule, at least as applied to the case before us. In that case the first count charged unlawful possession of intoxicating liquor; the second, unlawful possession of property designed and intended for use in the manufacture of intoxicating liquor; the third, unlawful manufacture of intoxicating liquor, and the fourth, the maintenance of a common nuisance. Upon trial the plaintiff in error was found not guilty on the first, second, and third counts, and guilty of maintaining a nuisance as charged in the fourth count. It would appear that the only evidence introduced in support of the fourth count was that tending to establish guilt ₍under the first three counts upon which plaintiff in error was acquitted. Judge Donahue, while agreeing with the statement in the majority opinion that a defendant cannot complain if he be erroneously

acquitted of an offense charged in one count of an indictment, and properly convicted of an offense charged in another count of the indictment, although the same evidence clearly established his guilt as to both, says:

"I cannot, however, concur in the majority opinion as to the application of these settled principles of law to the facts of this case. In my opinion, the rule as stated in the authorities cited is limited to cases in which the offenses charged in the several counts are separate and independent crimes, and can have no application where the offenses charged in the counts upon which defendant has been acquitted are essential elements of the crime ,of which he has been convicted.
* * *

"No evidence was offered by the government tending to prove the defendant guilty of this offense other than the evidence tending to prove unlawful possession of intoxicating liquor as charged in the first count, unlawful possession of property designed and intended for use in the manufacture of intoxicating liquor, as charged in the second count, and the unlawful manufacture of intoxicating liquor for beverage purposes, as charged in the third count.

"The jury found that the evidence offered by the government was not sufficient to prove the defendant guilty of either of these offenses and returned a verdict of 'not guilty' on the first, second, and third counts, but, notwithstanding no other or further evidence was offered by the government tending to prove any other essential element of maintaining a nuisance as defined by the National Prohibition Act, found the defendant guilty of this offense as charged in the fourth count."

[3] We concur in this statement, which is in harmony with the prior holding of this court. See, also, Rosenthal v. United States (C. C. A. 9) 276 F. 714. It must follow, then, that the verdict as to the third or nuisance count, must be supported by evidence other than the facts set out in the first or sale count; therefore the record contains no evidence as to sale, which is one of the elements essential to the establishment of a common nuisance under the statute. It is universally recognized that we may not speculate as to the reasoning or considerations that led to the verdict of the jury. We are bound by the result. The verdict of guilty on the third count must be based on evidence other than that pleaded in support of the first count. It remains to be considered whether there is such evidence.

[4] The sale element being eliminated, we are forced to rely entirely upon proof of possession, accompanied by facts tending to show that Murphy's place was maintained for keeping and selling intoxicating liquor in violation of the act. On this point the testimony amounts to this: The liquor was found in an adjacent part of the building, over which not only is there no testimony that Murphy exercised dominion, but affirmative testimony to the contrary. The assumed inference that this liquor was his, or used in his place of business, depends entirely upon the fact that, during the period immediately preceding the raid, a single government witness testifies that from across the street he saw parties leave the saloon, enter the doorway of that part of the building in which the liquor was found, and shortly thereafter return to the saloon. No one saw any liquor taken from the one place to the other; no one saw any sale or disposition of liquor made in the ·saloon. As to both these things we are remitted entirely to suspicion. If some witness in the saloon had testified to a sale, or repeated \sales, of liquor, this testimony, coupled with the corresponding trips to the place where the liquor was found, would, perhaps, have disclosed a situation justifying submission to the jury.

[5] The trial court properly instructed the jury that by possession is meant actual possession by the person who is accused of having the intoxicating liquor, not necessarily in his hands, but he must have control and dominance over it; in such case, the liquor need not, of course, be in the saloon itself if it is in a place that is reasonably appurtenant to the operation of the saloon; but here we are confronted by the absence of any testimony as to such dominance and control, as to the dispensing of liquor in the saloon, and as to the procuring of liquor from the adjacent rooms by anyone shown to be connected with Murphy or otherwise. We are left with suspicion and presumption only, in all these respects. It is entirely possible, if not probable, that these gaps could have been closed by proper investigation. We are not permitted to supply the missing links. Such casual and superficial methods on the part of enforcement officers should not be indulged. Courts should not strain the principles established for the protection alike of society and, those accused of crime. This conclusion as to the third count applies also to the second count.

The result is that the judgment as to both the second and third counts is reversed for want of legal evidence to sustain it and the case remanded for a new trial.