## SPEILLER v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
March 7, 1929.

No. 3888.

B. I. De Young, of Philadelphia, Pa., for appellant.

Charles Denby, Jr., of Philadelphia, Pa., for the United States.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

DAVIS, Circuit Judge. This is an appeal from a judgment of the District Court imposing a sentence of one year and one day of imprisonment upon the appellant in the federal penitentiary at Atlanta, Ga.

The indictment contained three counts. The first and second counts admittedly charge the same crime, causing the transportation in interstate commerce by means of a motor car from Philadelphia, Pa., to Havre de Grace, Md., of Marie Hudkinson for the purpose of prostitution and other immoral purposes. The third count charged that the defendant persuaded and enticed Marie Hudkinson to go from Philadelphia to Havre de Grace for the purpose of prostitution.

The defendant pleaded "not guilty." He was tried to the court and jury, which returned a verdict of guilty on the first count and not guilty on the second count. The third count was withdrawn from the consideration of the jury.

Marie Hudkinson was the only witness who testified for the Government. She said that she met or saw the defendant at a dance hall at Eighteenth and Market streets, Philadelphia, in 1925, but that she did not speak to him at that time; that she met him again on the night of October 13, 1927, and, after the dance, she went to his apartment at 1430 Poplar street, Philadelphia, and had sexual intercourse with him; that she met him again on October 16th, three days later, at Broad and Poplar streets, and he took her by automobile from there to 626 Erie street, Havre de Grace, Md., for the purpose of prostitution; that he left Havre de Grace that day, and she remained there ten days, worked as a prostitute, made about $50, gave half of it

to the "madam" of the house, and kept the other half; that a man by the name of Levy went down from Philadelphia on October 30, 1927, brought her back to Philadelphia, and registered with her at the Lorraine Hotel under the name of "Mr. & Mrs. Ben Speiller, New York"; that he had previously taken her to Blackwood, N. J., where he lived with her for three months.

On November 1, 1927, she made an affidavit before William W. Mintzer, clerk of the municipal court of Philadelphia, charging the defendant with having "carnal knowledge" of her body in his apartment, and with taking her to Havre de Grace, Md., where she committed fornication with men. When that case based upon her affidavit came up for trial before Judge Brown in the municipal court, she denied that she signed the affidavit, said that the defendant did not take her to Havre de Grace, and that her statements to Mr. Mintzer were "all lies." Thereupon Judge Brown said: "I want no further testimony from her. Take her out." That ended the case in the municipal court.

On December 1, 1927, the defendant was indicted in the United States District Court. On the 13th of that month, the defendant was called for trial. The next day the jury rendered a verdict of guilty, and on May 7, 1928, he was sentenced to imprisonment as above stated.

At the beginning of her cross-examination in the district court, Marie Hudkinson fainted, and was immediately attended by a physician, who had a conversation with her in the presence of the jury, and one of the jurors left the box to assist the physician.

██ The atmosphere of the trial, if not hostile to defendant, was certainly not helpful to him. The assistant United States attorney in part created this atmosphere. He asked the defendant such questions as: "Now is it not a fact that you have made it a practice to take girls and put them into prostitution?" This question, as he must have known, was highly improper, and, in view of the fact that the defendant was charged with taking Marie Hudkinson from Philadelphia to Havre de Grace and putting her into a house of prostitution, it was very prejudicial and damaging.

██ The defendant requested the judge to charge the following point:

"The Government's sole witness, Marie Hudkinson, admitted having sworn falsely, and her testimony should be given the greatest scrutiny and considered with the greatest caution."

This was declined because it was not submitted before the address of counsel to the jury. The record shows that Mrs. Hudkinson, on whose testimony alone the government relies, is a woman without morals, has a reckless disregard of the truth, and that she would without hesitation commit perjury whenever it suits her purpose. In his opinion refusing a new trial, the learned district judge said:

"The conviction was had upon the uncorroborated testimony of the prosecuting witness, a girl who had lived an immoral life for some time prior to the day when she was placed in a house of prostitution in Maryland. In addition, she admitted having committed perjury in a proceeding against this defendant in the State court. Upon her return from Maryland she made an affidavit charging the defendant with having taken her there. Then upon being placed upon the witness stand in the proceeding in the State Court referred to, she repudiated her affidavit, denied having made it and said that the defendant had had nothing to do with her transportation to Maryland."

The defendant absolutely denied that he took her to Havre de Grace.. If he did take her, there is no evidence that he went down there during the two weeks that she was there. He got no money from her, and made no effort whatever to do so. But, in some unexplained way, Levy, who had lived three months with her in a bungalow in New Jersey, learned that she was in Havre de Grace, went down there, brought her to Philadelphia, took away from her the money which she had earned as a prostitute, registered with her as Mr. and Mrs. Ben Speiller at the Hotel Lorraine, and then took her to the city hall in Philadelphia, where she swore to the affidavit that the defendant took her to Havre de Grace. Under these circumstances, while the request of the defendant was not submitted in time, the jury should have been instructed, even without request, that her testimony should be subjected to careful scrutiny and considered with great caution.

██ In his charge the learned trial judge said of the first and second counts:

"The first two counts, however, charge in different language the same offense, and your verdict might be either not guilty generally, or guilty generally, or you can convict the defendant under the first count and acquit him under the second count, or convict him under the second and acquit him under the first."

684

The jury returned a verdict of guilty on the first count and not guilty on the second count.

In the case of John Hohenadel Brewery Co. v. United States (C. C. A.) 295 F. 489, we said:

"The brewing company contends that the verdict of guilty on the seventh count cannot stand in the face of the verdict of not guilty on the other counts. If the government relies upon the facts charged in the other counts to sustain the verdict of guilty on the seventh count, the judgment cannot stand, for the jury has found as a fact that the company did not commit the acts therein charged and in) that case, the verdict, as defendant contends, would be 'inexplicable and inconsistent.' Facts that have no legal existence may not support a verdict. The verdict of guilty on the seventh count must be based on evidence other than that pleaded in support of the first six counts."

In the instant case, the verdict of guilty on the first count is not based on other evidence than that on which the jury found the defendant not guilty on the second count. The government relied upon the same facts to support a conviction in both counts. In the second count, the jury said, in substance, that these alleged facts are not true; they have no legal existence. Where there is an acquittal on one count of an indictment and a conviction on another count, charging the same crime, the verdict of conviction will not be allowed to stand unless supported by evidence other than that on which the acquittal was based. Peru v. United States, 4 F.(2d) 881 (C. C. A. 8); Murphy v. United States, 18 F.(2d) 509 (C. C. A. 8); Boyle v. United States, 22 F.(2d) 547 (C. C. A. 8). We are aware that the Circuit Court of Appeals for the Second Circuit has taken a different view in the cases of Steckler v. United States, 7 F.(2d) 59, and Seiden v. United States, 16 F.(2d) 197. The Seventh and Sixth Circuit Courts of Appeals in the cases of Carrignan v. United States, 290 F. 189 and Gozner v. United States, 9 F.(2d) 603, agree with the Second Circuit, but with great respect we are constrained to differ with them. When the liberty of a citizen is at stake, a jury will not be permitted to make a plaything of a verdict and blow hot and cold at the same time.

It is only fair to say that this point was not raised in the court below, and so was not considered by it, but, under the facts in this case, as well as the authority of the case of United States v. Florence E. Williams, 49 S. Ct. 97, 73 L. Ed. —— (decided January 2, 1929), and rule No. 11 of this court, we feel justified in considering the question.

The judgment is reversed, and a new trial awarded.