**UNITED STATES of America,**
Appellee,

v.

**Joseph MAYBURY, Defendant-Appellant.**

**No. 172, Docket 25857.**

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1959.

Decided Jan. 27, 1960.

Lumbard, Chief Judge, and Hand, Circuit Judge, dissented in part.

Richard E. Nolan, New York City, (Agnes Folk Nolan, Florence M. Kelley, The Legal Aid Society, New York City, on the brief), for appellant.

Margaret E. Millus, Asst. U. S. Atty., New York City (Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAND and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Maybury was indicted in the Eastern District of New York on two counts. Both related to a United States Treasury check for $68 payable to Abraham Kohl. The first count charged that, for the purpose of obtaining or receiving money from the United States, Maybury forged Kohl's name on the reverse of the check in violation of 18 U.S.C. § 495; the second charged that, in violation of the same section, Maybury uttered the check with intent to defraud the United States, knowing the endorsement to have been forged. Maybury was tried before Judge Abruzzo, jury trial having been waived.

It was stipulated that the check was a duly issued Treasury check; that it had been mailed by the government to Abraham Kohl, the payee; and that if Kohl had been called as a witness, he would have testified that he had never received, signed or endorsed it or authorized anyone else to sign or endorse it on his behalf. The check was placed in evidence. On the reverse are the names "Abraham Kohl," "Joseph Maybury" and "William Kozin." There is much similarity in the writing of the names of Kohl and Maybury, but there was no expert testimony whether or not the names were written by the same hand.

A secret service agent identified a statement by Maybury giving the latter's version of what occurred. This was that the check had been in the possession of a man known to Maybury as Barney; that Maybury and Barney had been drinking in Casey's Steak House, a restaurant and tavern in Brooklyn; that after they "had been drinking on and off for about three days, at this tavern, Barney ran short of cash and asked the bartender to cash the subject check for him"; that "in view of the fact that Barney could not write too good, he, Barney, asked me to sign his name to the check"; that Maybury signed "the check for Barney who I believed was the rightful payee"; and that Maybury

thereafter signed his own name as a second endorser at the bartender's request. In fact the check was cashed not by the bartender, but by Kozin, who was also in the tavern. Kozin testified that he had known Maybury for about a year as a fellow-patron of the tavern; that no one was with Maybury when Kozin cashed the check; and that Kozin did not know of any habitué of the tavern by the name of Barney.

Judge Abruzzo acquitted Maybury under Count I of the indictment, which charged forgery, but found Maybury guilty under Count II, which charged the uttering or publishing of a forged check with intent to defraud the United States, knowing the same to be forged. The appeal is from the judgment of conviction on this count.

Maybury contends the judgment of conviction must be set aside because the evidence was not sufficient to warrant it and because the acquittal on the charge of forgery was inconsistent with the conviction on the charge of uttering a forged check knowing the same to be forged. The government says the evidence was sufficient. Answering the claim of inconsistency in the treatment of the two counts, it says, *first,* that decisions of this Court and the Supreme Court deprive the alleged inconsistency of legal consequence and, *second,* that in fact there was none. All of us hold the evidence was sufficient. But a majority of us reject the government's claim that the rule laid down by this Court in Steckler v. United States, 2 Cir. 1925, 7 F.2d 59, and by the Supreme Court in Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, upholding jury verdicts in criminal cases despite inconsistency as between counts, applies when a criminal case has been tried to a judge, find that, on the facts here, the acquittal on the first count was inconsistent with the conviction on the second, and therefore reverse the conviction. As to the effect of this, more hereafter.

We said in United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 671, af-

firmed 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397, citing many cases, that on a trial for crime "the prosecution makes out a sufficient case to go to the jury, if the evidence would have been enough in a civil action; the only difference between the two is that in the end the evidence must satisfy the jury beyond any reasonable doubt." In United States v. Dudley, 2 Cir., 1958, 260 F.2d 439, 440, we applied this same principle in a criminal case tried before a judge. Here the government's evidence would clearly have been sufficient to go to a jury in a civil case; and we must assume the trial judge instructed himself, "respectfully and with a proper show of deference," that he must be convinced beyond a reasonable doubt and dutifully complied with his own instruction.

■ The government says that, under our decision in Steckler v. United States, supra, and the Supreme Court's approval of this in Dunn v. United States, supra, inconsistency in the disposition of counts in an indictment is without legal significance. Recognizing that these cases dealt with inconsistencies in a jury verdict, the government contends the same principle ought be applied when a criminal indictment has been tried to a judge, and cites our language in United States v. Dudley, supra, that the waiver of a jury "substitutes the judge for the jury in all respects." The question seems to be one of first impression in this circuit and, so far as we have been able to discover, in others, except for McElheny v. United States, 1944, 146 F.2d 932, where the Ninth Circuit applied the Dunn jury verdict rule to a criminal trial before a judge without discussing whether the considerations were necessarily the same. Chief Judge LUMBARD and I believe that they are not and that the Dunn rule should not be extended to a criminal trial before a judge.

The Steckler and Dunn opinions show on their face that the decision to ignore inconsistencies in the verdict of a jury in a criminal case was based on special considerations relating to the nature and function of the jury in such cases rather than on a general principle to be applied even when these considerations were absent. This Court explained in Steckler (7 F.2d at page 60):

"The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

In Dunn, Mr. Justice Holmes quoted this with approval (284 U.S. at page 393, 52 S.Ct. at page 190) and added a reference to Horning v. District of Columbia, 1920, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185, in which he had noted that in a criminal case "the jury has the power to bring in a verdict in the teeth of both law and facts." The vogue for repetitious multiple count indictments may well produce an increase in seemingly inconsistent jury verdicts, where in fact the jury is using its power to prevent the punishment from getting too far out of line with the crime. See United States v. Collins, 2 Cir., 272 F.2d 650.

The special considerations relating to the role of the jury go back to the very beginnings of the use of the jury as a mode of trial. Trial by jury came into being as an alternative not to trial by judge but to the ancient methods of compurgation and ordeal. The greatest historian of our law has remarked that from the outset there was an "arbitral" element in jury trial. "Both litigants have agreed to be bound by a verdict of the country"; each "has asked for it and by it he must stand or fall." [1] Professor Plucknett has made the same point in language especially pertinent here:

"At first, the jury was no more regarded as 'rational' than the ordeals

1. 2 Pollock and Maitland, History of English Law, 623.

which it replaced, and just as one did not question the judgments of God as shown by the ordeal, so the verdict of a jury was equally inscrutable. It is but slowly that the jury was rationalized and regarded as a judicial body."[2] Steckler and Dunn show it has not yet been deemed wise that this process of rationalization should be carried to the point of requiring consistency in a jury's verdict in a criminal trial.

Another special consideration underlying the rule of Steckler and Dunn is the requirement of unanimity. This also goes back to early days. "The verdict of the jurors is not just the verdict of twelve men; it is the verdict of a *pays*, a 'country,' a neighborhood, a community." One does not challenge "the voice of the country" for inconsistency among the jurors; "The justices seem to feel that if they analyzed the verdict they would miss the very thing for which they are looking, the opinion of the country."[3] Ignoring inconsistency in a jury's disposition of the counts of a criminal indictment may thus be deemed a price for securing the unanimous verdict that the Sixth Amendment requires, Andres v. United States, 1948, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055. Hibdon v. United States, 6 Cir., 1953, 204 F.2d 834, 37 A.L.R.2d 1130, and for interposing "the voice of the country" against the possibly excessive zeal of prosecutors. Steckler and Dunn thought it not too high a price for "the most transcendent privilege which any subject can enjoy or wish for * * *" 3 Blackstone, Commentaries, * 379.

None of these considerations is fairly applicable to the trial of a criminal case before a judge. There is no "arbitral" element in such a trial. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the "voice of the country," even when he sits in the jury's place. If he deems an indictment multiplicious, he has only to say so, and the time for him to exercise any "lenity" that he deems warranted is on sentence. There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts. In civil cases inconsistencies in the findings of a judge are not tolerated, see White v. State, 1940, 260 App.Div. 413, 23 N.Y.S.2d 526, and inconsistencies even in jury verdicts may call for corrective action. Fed.R.Civ.Proc. 49 (b), 28 U.S.C.; Stetson v. Stindt, 3 Cir., 1922, 279 F. 209, 23 A.L.R. 302; Hartman v. White Motor Co., D.C.W.D.Mich. 1952, 12 F.R.D. 328. We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in "vagaries" in the disposition of criminal charges that, for historic reasons, has been granted the jury. United States v. Dotterweich, 1943, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48. We know the role of logic in law is not unlimited; but "Holmes did not tell us that logic is to be ignored when experience is silent."[4] Since we find no experience to justify approval of an inconsistent judgment when a criminal case is tried to a judge, we think logic should prevail.

We thus reach the question whether the acquittal under the count for forging the check was inconsistent with the conviction for uttering the check knowing it to have been forged. This would not necessarily be so. An essential element of the crime of forgery is making the false writing, Fitzgibbons Boiler Co. v. Employers' Liability Assurance Corp., 2 Cir., 1939, 105 F.2d 893, but that is not an essential element in the crime of uttering a check knowing it to be forged. On the other hand, the crime of uttering, defined in the second par-

---

**2.** A Concise History of the Common Law, 125. See also 1 Holdsworth, History of English Law, 317.

**3.** 2 Pollock and Maitland, op. cit., 624, 626.

**4.** Cardozo, The Nature of the Judicial Process, 33.

agraph of 18 U.S.C. § 495, requires proof of putting forth the false writing, which is not an essential element of forgery. In consequence, placing Maybury in jeopardy under an indictment for forgery alone would not have barred subsequent prosecution for uttering, see State v. Blodgett, 1909, 143 Iowa 578, 121 N.W. 685; Hooper v. State, 1891, 30 Tex.App. 412, 17 S.W. 1066, and acquittal under a separate indictment for forging would have operated as *res judicata* on a subsequent indictment for uttering only to the extent of estopping the government from contending that Maybury himself forged the check, leaving the government free to prove by other means that he knew it to be forged.

Appellant insists that, however all this might be in the abstract, here there was no rational basis on which the trial judge, if not convinced beyond reasonable doubt that Maybury had forged the endorsement, could be convinced beyond reasonable doubt that Maybury had uttered or published the check knowing the endorsement to be forged. Compare Sealfon v. United States, 1948, 332 U.S. 575, 68 S. Ct. 237, 92 L.Ed. 180. Both the transcript of the trial and the judgment of conviction make it plain that the trial judge rejected Maybury's story about "Barney" as wholly unworthy of belief. Before rendering his judgment the judge stated: "I believe that the check came into his possession not rightfully, and he signed Abraham Cole's name. That there was no Barney there. That he signed the name without any authority and then signed his own name Maybury." But if the judge was convinced of this, how can we explain the acquittal for forgery? And if he was not so convinced, how on this record was there any basis for convicting Maybury of uttering the check knowing it to have been forged? Attempted reconciliation on the basis that the judge's disbelief in the "Barney" story sufficed for a finding of fraudulent uttering but not of forgery, while possible in theory, does not fit the evidence or the transcript. Whatever the situation might be in other cases, Chief Judge

LUMBARD and I think that in this case acquittal of forging the endorsement was inconsistent with conviction for uttering, and we can have no such confidence in the correctness of the judgment for the latter as is needed to permit it to stand.

We are divided as to the consequences of this. Chief Judge LUMBARD thinks that Maybury can no longer be convicted on either count and that the indictment should therefore be dismissed; Judge HAND believes that if we reverse, which he would not do, Maybury may not be retried on the forgery count but may be on the uttering count; I think he may be retried on both. On this issue, therefore, a majority holds that Maybury may be retried for uttering, and for that only.

Whether Maybury may be retried on the forgery count depends on the application to be given to the guarantee of the Fifth Amendment that a person shall not "be subject for the same offence to be twice put in jeopardy of life or limb." My brothers think the guarantee prevents this, and I bow to them, although if I were alone, I would take a different view. I do not question that to retry Maybury for forgery would offend the letter of the Fifth Amendment but so does the retrial of a defendant who has successfully appealed a conviction whether on one count or on many. However, at least since United States v. Ball, 1896, 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300, that would not be decisive. To this it is answered that Ball brought his conviction before an appellate court for review whereas Maybury did not bring his acquittal here, and Green v. United States, 1957, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, is cited as holding that a defendant who has successfully appealed a conviction on one count, in that case for insufficiency of the evidence, has not waived his right to freedom from renewed prosecution on another on which he was not convicted. To say that Maybury has not brought his acquittal before us seems to me right in form and wrong in substance. Of course, Maybury did not ask us to reverse the acquittal for

forgery; but, unlike Green, he made use of it, or of the finding behind it, as the means, indeed the only successful means, of his appeal. The basis for reversing the conviction for uttering was not that the acquittal of forgery was indubitably right and the conviction of uttering therefore wrong, but that on the facts here the two could not logically stand together. Under these special and limited circumstances I would hold that, despite the formal similarity to Green, the substantial resemblance is to Ball. Whether my result be rationalized on a continued vitality of "waiver" in this narrow area or on the basic considerations of fairness as between government and defendant that underlie United States v. Ball, I think immaterial.

We are all agreed that, under United States v. Ball, double jeopardy is no bar to a retrial on the uttering count. However, my brother LUMBARD believes such a retrial is precluded because *res judicata* would prevent the government from proving facts essential to Maybury's conviction and also because such a conviction would restore the very inconsistency that has led us to reverse the present conviction.

▪ If the doctrine of *res judicata* were here applicable, so that the government would be prevented from asserting that Maybury forged Kohl's name, there would still be nothing to prevent it from offering other evidence, not in the present record, that Maybury uttered the check knowing Kohl's signature to be forged. See Murphy v. United States, 8 Cir., 1927, 18 F.2d 509, 512. In fact, however, *res judicata* does not seem applicable at all. Admittedly, if Maybury had been previously acquitted on a single count indictment for forgery, *res judicata* would prevent the government from attempting to disprove an issue necessarily determined by such an acquittal. United States v. Oppenheimer, 1916, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161; Sealfon v. United States, supra. But no case has been found where the doctrine has been applied to acquittal on one count of a multiple count indictment

when the defendant has successfully appealed conviction on another count of the same indictment, and certainly not where the very ground of appeal was that the acquittal and the conviction cannot stand together. If this were the law of judgments, it would have to apply to acquittals resulting from the verdict of a jury as much as to those stemming from the judgment of a judge; in cases like Steckler and Dunn there could have been no retrial if there had been other grounds for reversing on the counts on which the defendant was convicted—a result clearly not contemplated, see 284 U.S. at page 393, 52 S.Ct. at page 190, and, indeed, it is hard to see how the result in those cases themselves could be defended. A plaintiff in a personal injury case who has caused a judgment entered on a compromise verdict to be set aside cannot claim the judgment as *res judicata* on the issue of liability, although the defendant had remained silent. Taylor v. Hawkinson, 47 Cal.2d 893, 306 P.2d 797 (Supreme Court of California, *en banc*, Traynor, J., 1957). The government's inability to appeal an acquittal on one count in a criminal case should not render this *res judicata* where the defendant has successfully appealed a conviction on another count, at least when the appeal was for inconsistency. Such a result would convert the guarantee of double jeopardy from a shield into a sword.

▪ To say that Maybury may not be retried for uttering because a conviction on that ground would maintain the very inconsistency that has led to reversal would press that doctrine beyond reasonable bounds. For, apart from the possibility that the government may adduce new evidence on a retrial, it misses the reason why we reverse for inconsistency. This is not because of any desire for *elegantia juris* but because we can have no confidence in a judgment convicting Maybury of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here. On a new trial for uttering, the judge or the jury would be free to conclude that

Maybury forged Kohl's name and, on that or some other basis not here present, find Maybury guilty of uttering the check knowing the endorsement to be forged. There would be no internal inconsistency in such a judgment, and no more reason for a court to be disturbed about it than when a different jury or judge reaches a different result on the retrial of a civil case; and Maybury could hardly complain that the Fifth Amendment, as my brothers read it, has led to his conviction for only one offense rather than two.

The appellant has been capably represented on this appeal by the Legal Aid Society, Richard E. Nolan and Agnes Folk Nolan of counsel.

Judgment reversed and new trial ordered on the count for uttering.

LUMBARD, Chief Judge (dissenting in part).

I agree with those parts of Judge FRIENDLY'S opinion which hold that the rule of Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, is not applicable to cases heard by the court without a jury, and that the verdicts upon the forgery and uttering counts in this case are inconsistent with each other. However, I cannot accept the view that the proper procedure under these circumstances is to remand the case for a new trial on both the forgery and uttering counts. I think that retrial on the forgery count, upon which defendant was acquitted, is forbidden by the double jeopardy clause of the Fifth Amendment and that retrial upon the uttering count is foreclosed for the very reasons which Judge FRIENDLY gives for not permitting inconsistent verdicts of a trial judge to stand. I would therefore order the indictment dismissed.

Maybury was acquitted by the trial court upon the forgery count. Apparently, the trial judge believed that the Government failed to submit sufficient evidence to sustain its burden of proving beyond a reasonable doubt that Maybury knew that he lacked authority from the rightful payee when he endorsed the payee's name on the check. Without such knowledge that he was unauthorized to act, Maybury could not have had the necessary intent to commit forgery.

Having once been acquitted of forgery, I think that the double jeopardy clause prohibits the Government from bringing Maybury to trial again. The Supreme Court has pointed out on numerous occasions that "under the Fifth Amendment * * * a verdict of acquittal is final, ending a defendant's jeopardy" and that "the Government [may] not secure a new trial * * * even though an acquittal may appear to be erroneous." Green v. United States, 1957, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199. I find nothing in the facts of the present case which warrant carving out an exception to this historic safeguard against governmental oppression. Surely trial before a judge is not so much less an ordeal that it does not constitute jeopardy whereas trial before a jury does. When the defendant waives trial before a jury he does not waive his rights under the Fifth Amendment.

Judge FRIENDLY seeks to narrow the impact of the double jeopardy protection by the assertion that Maybury, in appealing from his conviction for uttering, has also brought before us for review his acquittal on the forgery count. Proceeding from this premise, he finds apparently that Maybury has "waived" his constitutional protection—that the defendant must "take the privilege of attacking the judgment for inconsistency *cum onere*." I cannot accept this premise. I think that it flies in the face of reality and that it is contradictory to the views expressed by the Supreme Court in Green v. United States, supra.

Maybury appealed solely from his conviction for uttering. There is no suggestion anywhere in the record that he wished to bring his acquittal before us for review. Common sense tells us that he would have had no such desire, since he had already been fully vindicated on that count. Thus, if Judge FRIENDLY means by his opinion that Maybury voluntarily brought any more than his con-

viction before us for review, I believe that he is mistaken.

If, on the other hand, Judge FRIENDLY means that regardless of whether Maybury wishes to bring his acquittal before us, he must do so in order to obtain review and reversal of his uttering conviction, then I think that the Green case is controlling. In Green the Supreme Court held that a defendant tacitly acquitted by a jury of a greater offense but convicted of a lesser included offense, might not be retried for the greater offense after an appeal and reversal of his conviction for the lesser one. The Court found that any other result would place a defendant in the "incredible dilemma" of choosing between an appeal from his conviction with the accompanying risk of conviction for a greater offense upon retrial and no appeal at all. It seems to me that this is precisely the same choice that Judge FRIENDLY'S opinion forces upon Maybury. Either he must risk retrial for forging a check, for which offense he has already been acquitted, or he may not bring an appeal at all. I do not think it helps to say that Green may be distinguished because here it is the acquittal itself which is the ground of appeal. The ground of appeal is not the acquittal but rather the implicit finding of the trial court in acquitting on the forgery count that a necessary element of the crime of uttering—knowledge that the instrument was forged—was not proven. I do not think this ground of appeal is any different for present purposes than the assertion on appeal in Green that there was insufficient evidence to sustain the conviction for second degree murder. I therefore conclude that the double jeopardy clause forecloses retrial upon the forgery count.

This brings me to the question whether Maybury may be retried on the uttering count, upon which he was convicted. I agree that the double jeopardy clause imposes no bar. United States v. Ball, 1896, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. However, I think that the very fact that Maybury was acquitted of forgery because the trial court found that there was not sufficient evidence that he knew that he lacked authority to sign the check would prevent a finding in a second trial for uttering that Maybury knew that the instrument was forged. I reach this conclusion for two closely related reasons.

First, it is my understanding that the entire rationale of Judge FRIENDLY'S opinion is that a trial judge, unlike a jury, may not render inconsistent verdicts on two counts in an indictment. I agree with this position. But I think that it must follow that whether the inconsistent verdicts are handed down at one trial or at two can make no difference, so long as it is clear that they are inconsistent. The inconsistency between the verdicts in this case will not vanish simply by ordering a retrial on the charge of uttering. In order to find Maybury guilty of uttering at a new trial the judge will be required to determine that the defendant knew the instrument to be forged, and this determination will be inconsistent with Judge Abruzzo's finding at the first trial that Maybury did not know that he lacked authority to sign the check. The unseemliness of permitting judges to reach inconsistent verdicts will not be lessened by the fact that two trials take place rather than one, or that two different judges reach such verdicts rather than a single judge.

Second, I think that the doctrine of collateral estoppel forecloses a new trial for uttering. That doctrine provides that a fact expressly or necessarily decided in a suit between two litigants may not be redetermined in a new action between the same parties. Thus, determination of the fact of Maybury's knowledge of his lack of authority favorably to him in the first trial precludes a new determination of the same fact in a second suit. A determination of this same fact favorably to the Government is necessary to a conviction for uttering, for without it knowledge that the instrument was forged is lacking.

I would therefore dismiss the indictment in its entirety.

HAND, Circuit Judge (dissenting in part and concurring in part).

Regardless of whether the doctrine of Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, applies to cases tried to a judge, I do not see why the conviction on Count 2 should be reversed, however erroneous was the acquittal on Count 1, unless there was some inconsistency in the findings upon one of the facts constituting the crime charged in Count 1 and upon the same fact constituting the crime charged in Count 2. The reason for reversing the conviction in that event would be that we could not know what the judge found as to the fact common to the two crimes. I do not see why otherwise a person should escape punishment for a crime of which he is found guilty, because he was acquitted of another crime of which he was also guilty. Consistency in the application of the law is not an interest which the accused may invoke, unless it operates to his disadvantage, which by hypothesis would not then be true. We should not exculpate him in order to prevent errors in judicial dialectic.

In the case at bar even if the judge found that Maybury had *not* endorsed the check when he entered the judgment of acquittal, and that he *had* endorsed it when he entered judgment of conviction, I should not agree that the conviction could not stand, unless it appeared that he had relied upon Maybury's endorsement as a necessary fact in determining to convict. It is impossible to know what he did find as to the endorsement. In his colloquy with counsel at the close of the evidence he said several times that Maybury had endorsed the check, yet on the motion to set aside the "verdict" he said that there "wasn't any evidence he signed the name Abraham Kohl * * * Somebody endorsed Abraham Kohl's name on the back of the check"; and he concluded by saying that the "inference to be drawn" (was that) "he knew the check was a forged check or he had reason to understand it was a forged check," and "he should have had knowledge it was a check not properly endorsed by the payee." It appears to me that there was enough evidence to support a finding of fraudulent "uttering." The trumped up explanation of a supposititious "Barney who I believed was the rightful payee," and who asked him to sign Kohl's name, was surely a sufficient basis for imputing to Maybury the fact that it was not the payee who got the money.

Since Judge LUMBARD wishes to reverse the judgment on both Counts and to dismiss them, and Judge FRIENDLY wishes to reverse the judgment on both Counts but to order a new trial on both, we are at an impasse. Although for the reasons I have tried to give I think that the judgment on Count 2 was right, I am willing to go along with Judge FRIENDLY in reversing that judgment and order a new trial. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L. Ed.2d 199, seems to me to forbid a reversal of the judgment on Count 1, and, as I understand it, Judge FRIENDLY does not insist upon reversing that judgment. Therefore, the result is that the judgment of conviction on Count 2 will be reversed and a new trial ordered, and the judgment on Count 1, from which no appeal was, or could have been taken, will remain unaffected.