UNITED STATES of America, Appellee,

v.

Leonid TANKEL, Appellant.

No. 401, Docket 28582.

United States Court of Appeals Second Circuit.

Argued April 8, 1964.

Decided April 27, 1964.

. Robert C. Zampano, U. S. Atty., Anthony G. Apicella, Asst. U. S. Atty., for appellee.

Before SWAN, MOORE and SMITH, Circuit Judges.

SWAN, Circuit Judge:

The sixteen count indictment charged appellant and a corporation he owned (hereafter "General Parcel") with use of the mails in violation of 18 U.S.C.A. § 1341. The appellant and his corporation were tried without a jury before Judge Anderson, who made detailed findings of fact, followed by a discussion of legal issues. He acquitted the defendants on seven counts and found them guilty on nine.

Appellant was sentenced to imprisonment for two years on each of the nine counts, to run concurrently; but execution of the sentence was suspended as to all but four months, to be followed by four years' probation. A nominal fine was imposed on General Parcel, and it has not appealed.

The appellant presents three contentions: (1) insufficiency of the evidence to prove guilt beyond a reasonable doubt; (2) inconsistency between acquittal on some counts and conviction on the others; and (3) fatal variance between the crime charged and the proof. For reasons hereafter stated we hold none of appellant's contentions sustainable, and affirm the judgment.

In 1957 Tankel formed General Parcel to engage in the business of sending gift parcels from customers (senders) in the United States to Russian residents. The main office of General Parcel was in New York City. Branch offices were established in several other cities, including Hartford, Connecticut.

General Parcel made a contract with Intourist, the government agency concerned with gift parcels to Russian residents, pursuant to which General Parcel was to collect from the American senders the Russian customs duty and the Intourist service charge, as well as its own fee and certain other charges. It was

Heffner & Block, New York City, for appellant. Frederick H. Block, Daniel H. Greenberg, David Kessler, New York City, of counsel.

authorized to issue the license which must accompany the parcel, and was required to report monthly the number of licenses issued, and to remit to Intourist by the tenth of the following month the amount owed.

The customary procedure when a sender brought a gift parcel to a branch office was as follows: the branch prepared a work sheet listing the contents of the parcel, its cost and weight, the customs duty, Intourist fee, General Parcel's fee, the United States postal charge and the fee for insuring the parcel. The sender paid this total sum to the branch, receiving a copy of the worksheet as his receipt.[1] The branch mailed the worksheet to the main office with a check for deposit in General Parcel's account. The license was then prepared and mailed to the branch office, which then mailed the parcel to the addressee in Russia, with the license inclosed therein.

In March or April 1959 Tankel changed the above described customary procedure because General Parcel lacked funds to pay for the previously issued licenses. Instead of disclosing this condition to Intourist or ceasing to accept new parcels, he caused General Parcel to commence underreporting the amount of licenses issued—selecting arbitrarily the amount to be reported.

By December 1960 General Parcel owed Intourist $158,000 for customs duties and service fees.[2] On February 17, 1961 Intourist cabled "Clearing your parcels is stopped until you repay your debt to Intourist. Beginning February 20th please discontinue issuing licenses and inform us by cable number of last issued invoice." Apparently Tankel did not believe that Intourist would enforce the literal terms of the cable, and it did not.

But any optimism Tankel may have entertained that he could continue to do business with Intourist could not reasonably exist after receipt of the cable of May 23, 1961. This informed him that money sent for April had been applied against the December indebtedness, therefore the licenses issued in April are unpaid, the customs would not let the packages go through and they were being sent back. The cable also demanded payment of $75,000 in June.

During June 500 parcels were returned to the Post Office in New York City. By September 1963 approximately 8,000 had been returned to General Parcel's main office and branch offices.

All of the nine counts on which Tankel was convicted concerned parcels mailed during the month of June 1961 (Findings 45–58). The sums paid by the senders were mailed by the Hartford branch to the main office, where they were cashed, and the proceeds used as Tankel directed (Finding 59), and not used to pay customs duties on parcels shipped from that branch (Finding 60), and "The defendants knew that the money so received by them could not and would not be used to pay the customs duties for the several parcels of the customers" (Finding 61).[3]

■■ It is true that it must be shown that the mails were used as part of the fraudulent scheme, and as to each letter relied upon, that the particular letter was not sent out until after a scheme to defraud had been born. United States v. Buckner, 2 Cir., 108 F.2d 921, 925. The foregoing statement of facts demonstrates that this test was met as to the mailings involved in the nine counts on which the defendants were convicted. Appellant's point (1) is invalid.

---

1. The worksheet contained the following: "I understand and agree that General Parcel & Travel Co., Inc. in good faith, and in accordance with its arrangements with Intourist, Ltd., undertakes to ship the above merchandise to the addressee * * * *"

2. By the end of January 1961 the reported licenses had accumulated to about 5,000

and the debt to Intourist was more than $200,000.

3. See United States v. Kyle, 2 Cir., 257 F.2d 559, 564, cert. den. 358 U.S. 927, 79 S.Ct. 312, 3 L.Ed.2d 301, where we said that "The conscious knowing intent to defraud" is one of "the two essential elements of the mail fraud statute."

It is also true, as argued in appellant's point (2), that inconsistent verdicts rendered by a judge sitting without a jury cannot be sustained. United States v. Maybury, 2 Cir., 274 F.2d 899. In acquitting defendants on the counts involving mailings before June 1961 the district judge generously gave them the benefit of every doubt. But it is obvious from what we have already said that in June the defendant's information was more complete than it was before that date.

The prior discussion also disposes of point (3) as to variance between the indictment and the proof.

Judgment affirmed.