*223 Justice Stevens,
dissenting.
Like Brigham City v. Stuart, 547 U. S. 398 (2006), and Kansas v. Marsh, ante, p. 163, this is a case in which the Court has granted review in order to make sure that a State’s highest court has not granted its citizens any greater protection than the bare minimum required by the Federal Constitution. Ironically, the issue in this case is not whether respondent’s federal constitutional rights were violated—that is admitted—it is whether the Washington Supreme Court’s chosen remedy for the violation is mandated by federal law. As the discussion in Part II of the Court’s opinion demonstrates, whether we even have jurisdiction to decide that question is not entirely clear. But even if our expansionist post-Michigan v. Long jurisprudence supports our jurisdiction to review the decision below, see 463 U. S. 1032 (1983), there was surely no need to reach out to decide this case. The Washington Supreme Court can, of course, reinstate the same judgment on remand, either for the reasons discussed in Part II of the Court’s opinion, see ante, at 217-218, and n. 1, or because that court chooses, as a matter of state law, to adhere to its view that the proper remedy for Blakely errors, see Blakely v. Washington, 542 U. S. 296 (2004), is automatic reversal of the unconstitutional portion of a defendant’s sentence. Moreover, because the Court does not address the strongest argument in respondent’s favor—namely, that Blakely errors are structural because they deprive criminal defendants of sufficient notice regarding the charges they must defend against, see ante, at 220, n. 3—this decision will have a limited impact on other cases.
As I did in Brigham City and Marsh, I voted to deny certiorari in this case. Given the Court’s decision to reach the merits, however, I would affirm for the reasons stated in Justice Ginsburg’s opinion, which I join.
*224 Justice Ginsburg, with whom Justice Stevens joins, dissenting.
Between trial and sentencing, respondent Arturo Recuenco’s prosecutor switched gears. The information charged Recuenco with assault in the second degree, and further alleged that at the time of the assault, he was armed with a deadly weapon. App. 3. Without enhancement, the assault charge Recuenco faced carried a sentence of three to nine months, id., at 15; Wash. Rev. Code §§9.94A.510, 9A.36.021(l)(c) (2004); the deadly weapon enhancement added one mandatory year to that sentence, § 9.94A.533(4)(b).[1] The trial judge instructed the jury on both the assault charge and the deadly weapon enhancement. App. 7, 8. In connection with the enhancement, the judge gave the jurors a special verdict form and instructed them to answer “Yes or No” to one question only: “Was the defendant . . . armed with a deadly weapon at the time of the commission of the crime of Assault in the Second Degree?” Id., at 13. The jury answered: “Yes.” Ibid.
Because the deadly weapon Recuenco held was in fact a handgun, the prosecutor might have charged, as an alternative to the deadly weapon enhancement, that at the time of the assault, Recuenco was “armed with a firearm.” That enhancement would have added three mandatory years to the assault sentence. § 9.94A.533(3)(b). The information charging Recuenco, however, did not allege the firearm enhancement. The jury received no instruction on it and was given no special verdict form posing the question: Was the defendant armed with a firearm at the time of the commission of the crime of Assault in the Second Degree? See 154 Wash. 2d 156, 160, 110 P. 3d 188, 190 (2005) (“The jury was not asked to, and therefore did not, return a special verdict *225 that Recuenco committed the assault while armed with a firearm.”).
The prosecutor not only failed to charge Recuenco with assault while armed with a firearm and to request a special verdict tied to the firearm enhancement. He also informed the court, after the jury’s verdict and in response to the defendant’s motion to vacate: “The method under which the state is alleging and the jury found the assaul[t] committed was by use of a deadly weapon.” App. 35. Leaving no doubt, the prosecutor further clarified: “[I]n the crime charged and the enhancement the state alleged, there is no elemen[t] of a firearm. The element is assault with a deadly weapon.” Ibid. Recuenco was thus properly charged, tried, and convicted of second-degree assault while armed with a deadly weapon. It was a solid case; no gap was left to fill.
Nevertheless, at sentencing, the prosecutor requested, and the trial judge imposed, a three-year mandatory enhancement for use of a firearm. Ibid. Recuenco objected to imposition of the firearm enhancement “without notice .. . and a jury finding.” 154 Wash. 2d, at 161, 110 R 3d, at 190. Determining that there was no warrant for elevation of the charge once the trial was over, the Washington Supreme Court “remand[ed] for resentencing based solely on the deadly weapon enhancement which is supported by the jury’s special verdict.” Id., at 164, 110 R 3d, at 192. I would affirm that judgment. No error marred the case presented at trial. The prosecutor charged, and the jury found Recuenco guilty of, a complete and clearly delineated offense: “assault in the second degree, being armed with a deadly weapon.” The “harmless-error” doctrine was not designed to allow dislodgment of that error-free jury determination.
I
Under Washington law and practice, assault with a deadly weapon and assault with a firearm are discrete charges, at *226 tended by discrete instructions. As the Court observes, ante, at 215, a charge of second-degree assault while armed with a deadly weapon, § 9.94A.533(4)(b), subjects a defendant to an additional year in prison, and a charge of second-degree assault while armed with a firearm, § 9.94A.533(3)(b), calls for an additional term of three years. “Deadly weapon,” Washington law provides, encompasses any “implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death,” including, inter alia, a “pistol, revolver, or any other firearm.” §9.94A.602. “Firearm” is defined, more particularly, to mean “a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder.” §9.41.010(1). A handgun (the weapon Recuenco held), it thus appears, might have been placed in both categories.[2]
Washington Pattern Jury Instructions, Criminal (WPIC) (West Supp. 2005), set out three instructions for cases in which “an enhanced sentence is sought on the basis that the defendant was armed with a ‘deadly weapon,’” WPIC §2.06 (note on use): Deadly Weapon—General, §2.07; Deadly Weapon—Knife, § 2.07.01; Deadly Weapon—Firearm, § 2.07.02. When the prosecutor seeks an enhancement based on the charge that “the defendant was armed with a ‘firearm,’ ” § 2.06, trial courts are directed to a different instruction, one keyed to the elevated enhancement, §2.10.01.
Matching special verdict forms for trial-court use are also framed in the WPIC. When a “deadly weapon” charge is made, whether generally or with a knife or firearm, the pre *227 scribed form asks the jury: “Was the defendant (defendant’s name) armed with a deadly weapon at the time of the commission of the crime [in Count —]?” §190.01. When a “firearm” charge is made, the jury is asked: “Was the defendant (defendant’s name) armed with a firearm at the time of the commission of the crime [in Count —]?” § 190.02.
In Recuenco’s case, the jury was instructed, in line with the “deadly weapon” charge made by the prosecutor, App. 6-7, and the special verdict form given to the jury matched that instruction. The form read:
“We, the jury, return a special verdict by answering as follows:
“Was the defendant ARTURO R. RECUENCO armed with a deadly weapon at the time of the commission of the crime of Assault in the Second Degree?
“ANSWER: [YES] (Yes or No).” Id., at 13.
No “firearm” instruction, WPIC §2.10.01 (West Supp. 2005), was given to Recuenco’s jury, nor was the jury given the special verdict form matching that instruction, § 190.02; see supra, at 226, n. 2.
II
In the Court’s view, “this case is indistinguishable from Neder [v. United States, 527 U. S. 1 (1999)].” Ante, at 220. In that case, the trial judge made a finding necessary to fill a gap in an incomplete jury verdict. One of the offenses involved was tax fraud; the element missing from the jury’s instruction was the materiality of the defendant’s alleged misstatements. Under the mistaken impression that materiality was a question reserved for the court, the trial judge made the finding himself. In fact in Neder, materiality was not in dispute. See 527 U. S., at 7; see also id., at 15 (Neder “d[id] not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed.”). “Reversal without any consideration of the effect of the error upon the verdict would [have] sen[t] the case back for re *228 trial—a retrial not focused at all on the issue of materiality, but on contested issues on which the jury [had been] properly instructed.” Ibid. The Court concluded that the Sixth Amendment did not command that recycling.
Here, in contrast to Neder, the charge, jury instructions, and special verdict contained no omissions; they set out completely all ingredients of the crime of second-degree assault with a deadly weapon. There is no occasion for any retrial, and no cause to displace the jury’s entirely complete verdict with, in essence, a conviction on an uncharged greater offense.
Ill
The standard form judgment completed and signed by the trial judge in this case included the following segment:
“SPECIAL VERDICT or FINDING(S):
“(b) [ ] A special verdict/finding for being armed with a Firearm was rendered on Count(s) —.
“(c) [X] A special verdict/finding for being armed with a Deadly Weapon other than a firearm was rendered on Count(s) I.” App. 14.
Count I was identified on the judgment form as “ASSAULT IN THE 2ND DEGREE.” Ibid. Despite the “X” placed next to the “Deadly Weapon” special verdict/finding, and the blanks left unfilled in the “Firearm” special verdict/finding lines, the trial judge imposed a sentence of 39 months (3 months for the assault, 36 months as the enhancement).
Had the prosecutor alternatively charged both enhancements, and had the judge accurately and adequately instructed on both, giving the jury a special verdict form on each of the two enhancements, the jury would have had the prerogative to choose the lower enhancement. Specifically, the jury could have answered “Yes” (as it in fact did, see supra, at 227) to the “armed with a deadly weapon” inquiry while returning no response to the alternative “firearm” inquiry. See supra, at 226, and n. 2 (Washington’s statutory *229 definition of “deadly weapon” overlaps definition of “firearm”); cf. United States v. Martin Linen Supply Co., 430 U. S. 564, 573 (1977) (“[R]egardless of how overwhelmingly the evidence may point in that direction!, t]he trial judge is . . . barred from attempting to override or interfere with the jurors’ independent judgment in a manner contrary to the interests of the accused.”). Today’s decision, advancing a greater excluded (from jury control) offense notion, diminishes the jury’s historic capacity “to prevent the punishment from getting too far out of line with the crime.” United States v. Maybury, 274 F. 2d 899, 902 (CA2 1960) (Friendly, J.); see also Blakely v. Washington, 542 U. S. 296, 306 (2004) (recognizing jury’s role “as circuitbreaker in the State’s machinery of justice”).
* *
In sum, Recuenco, charged with one crime (assault with a deadly weapon), was convicted of another (assault with a firearm), sans charge, jury instruction, or jury verdict. That disposition, I would hold, is incompatible with the Fifth and Sixth Amendments, made applicable to the States by the Fourteenth Amendment. I would therefore affirm the judgment of the Supreme Court of the State of Washington.

 Since Recuenco was charged, some of the relevant statutory provisions have been renumbered, without material revision. For convenience, we follow the Court’s and the parties’ citation practice and refer to the current provisions.

 But see App. 38. When the prosecutor, post-trial but presentence, made it plain that he was seeking the three-year firearm enhancement rather than the one-year deadly weapon enhancement, Recuenco objected that the statutory definition of “firearm” had not been read to the jury, and that the prosecutor had submitted no evidence showing that Reeuenco’s handgun was “designed to fire a projectile by explosive such as gunpowder.” Ibid.